[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 3, 2004
THOMAS  K. KAHN
CLERK

_____

No. 01-17133

_____

D.C. Docket No. 99-08125-CR-DTKH


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

    versus


RAPHAEL R. LEVY,

                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(Opinion Aug. 3, 2004, 11th Cir., 379 F.3d 1241)


Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and
PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ J. L. EDMONDSON
CHIEF JUDGE

HULL, Circuit Judge, concurring in the denial of rehearing en banc, in which ANDERSON, CARNES and PRYOR, Circuit Judges, join:

We concur in this Court's denial of rehearing en banc because Defendant Levy did not raise a claim regarding a right to a jury trial on his sentencing enhancements until after this Court had affirmed his conviction and sentence. Indeed, Levy pled guilty and concedes that he never asked for a jury trial on his sentencing enhancements either in the district court or in his direct appeal to this Court. See United States v. Levy, 374 F.3d 1023 (11th Cir. 2004) (affirming conviction and sentence).

After this Court affirmed Levy's conviction and sentence, the United States Supreme Court decided Blakely v. Washington, 124 S. Ct. 2531 (2004), extending the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). Defendant Blakely argued that he had a right to a jury trial on "all facts legally essential to his sentence." Blakely, 124 S. Ct. at 2536. The United States Supreme Court "rejected the state's argument that Blakely's case was distinguishable from Apprendi because his 90-month sentence did not exceed the 10-year statutory maximum . . . ." United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004). Blakely is basically an extension of the Apprendi rule. See In re Dean, 375 F.3d 1287, 1289-90 (11th Cir. 2004).

3

After <u>Blakely</u>, Levy filed a petition for rehearing in this Court and, for the first time, argued that he had a right to a jury trial regarding his federal sentencing enhancements. Although <u>Blakely</u> did not involve the federal sentencing guidelines, Levy argued that "the reasoning" of <u>Apprendi</u>, <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S. Ct. 2428 (2002), and <u>Blakely</u> clearly lead to the conclusion that the federal sentencing guidelines are constitutionally infirm (hereinafter referred to as Levy's "<u>Blakely</u>-type" claim).

This Court properly denied Levy's petition for rehearing based on this Court's long-standing rule that issues raised for the first time in a petition for rehearing and not raised in an appellant's initial brief will not be considered. <u>See</u> <u>Levy</u>, 379 F.3d at 1242-45 (collecting cases). In denying Levy's petition for rehearing, this Court noted that

> our practice has been longstanding. As we have explained, the rule requiring that issues be raised in opening briefs "serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them. <u>See generally</u> <u>Presnell v. Kemp</u>, 835 F.2d 1567, 1573-74 (11th Cir. 1988)." <u>United States v. Ardley</u>, 273 F.3d 991, 991 (11th Cir. 2001) (<u>en banc</u>). Importantly, this rule applies neutrally to all appellants, whether the government or the defendant.

<u>Levy</u>, 379 F.3d at 1244.

The dissent concedes that: (1) the <u>Levy</u> panel was bound by circuit precedent, <u>see</u> <u>United States v. Ardley</u>, 242 F.3d 989, 990 (11th Cir. 2001)

4

(collecting cases); and (2) this Court recently denied en banc review of the very question in this case; that is, whether the rules concerning retroactivity are subject to this Court's procedural rules. See United States v. Ardley, 273 F.3d 991 (11ᵗʰ Cir. 2001) (denying rehearing en banc and explaining why Defendant's Apprendi claim was procedurally barred) (Carnes, J., concurring), cert. denied, Ardley v. United States, 535 U.S. 979, 122 S. Ct. 1457 (2002).

As in Ardley, there are two rules at issue in Levy's case: (1) the rule that Supreme Court decisions are to be retroactively applied to cases on direct review; and (2) the procedural rule that entirely new constitutional issues will not be considered for the first time by this Court in a petition for rehearing. The two rules in this case are equally important, but play separate roles and answer different questions. As we explained in Ardley,

> [r]etroactivity doctrine answers the question of which cases a new decision applies to, assuming that the issue involving that new decision has been timely raised and preserved. Procedural bar doctrine answers the question of whether an issue was timely raised and preserved, and if not, whether it should be decided anyway.

Ardley, 273 F.3d at 992 (Carnes, J., concurring). Many of the dissent's arguments in this case are answered in Ardley, 273 F.3d at 991-93. In particular, Ardley already explained why the dissent improperly conflates these two rules. Id. Ardley also articulates why, if the dissent's position was adopted, no type of

5

procedural bar could be adopted on direct appeal.  Id. at 992.

The dissent's main focus now is that under Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987), this Court is required to allow Defendant Levy to raise, for the first time, a Blakely-type issue in a petition for rehearing after this Court has issued an opinion affirming his conviction and sentence.  The dissent would have retroactivity rules trump and eliminate any procedural default rule on direct appeal.  Essentially, the dissent's rule would be that a new Supreme Court decision applies retroactively per se –  even if the defendant has never raised or preserved the constitutional issue and this Court has already affirmed the defendant's conviction and sentence – as long as the defendant is still in some phase of the direct appeal process.

Nothing in Griffith, nor any other Supreme Court decision, requires this result.  In fact, Supreme Court precedent indicates that the rules of retroactivity are subject to established principles of procedural default, waiver, and the like.  Indeed, as outlined below, the defendant in Griffith timely preserved the constitutional error at issue during his trial and on appeal.  The dissent dismisses the fact that the defendants in Griffith preserved the constitutional issue.  That fact is important, however.  We thus first examine Griffith in detail, and then other arguments in the dissent.

## I. SUPREME COURT CASE LAW

In <u>Griffith</u>, the United States Supreme Court concluded that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final . . . ." <u>Griffith</u>, 479 U.S. at 328, 107 S. Ct. at 716. A discussion of <u>Griffith</u> is in order because that decision is the foundation for the dissent's arguments. However, as explained below, nothing in <u>Griffith</u> saved an unpreserved error in a direct appeal.

After the Supreme Court decided <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712 (1986), and rejected a portion of the reasoning of <u>Swain v. Alabama</u>, 380 U.S. 202, 85 S. Ct. 824 (1965), the Supreme Court granted <u>certiorari</u> in two separate criminal cases from Kentucky and Oklahoma, in which the defendants had made unsuccessful challenges under <u>Swain</u> to the government's use of peremptory challenges. <u>Griffith</u>, 479 U.S. at 316-20, 107 S. Ct. at 709-11. In each of these cases, the defendant (prior to <u>Batson</u>) had preserved an objection in the trial court and at every stage of his direct appeal that the prosecutor had exercised his peremptory challenges in a racially discriminatory manner. <u>Griffith</u>, 479 U.S. at 316-20, 107 S. Ct. at 709-11. The defendants made this objection at every stage even though the defendants had clearly failed to prove that the prosecutor had engaged in a pattern of challenging black jurors <u>in a series of cases</u>, as required by

Swain.  See id. (discussing procedural history of the two cases).  Not surprisingly, each defendant lost at each stage of his direct appeal because each court held that the proof of discrimination was inadequate under Swain.  Id. (same).

In mid-1985, the defendants in Griffith petitioned the Supreme Court for certiorari while their convictions were still on direct review.  On April 30, 1986, the United States Supreme Court decided Batson.  In Batson, the Supreme Court departed from Swain's requirement of a pattern of racial discrimination requirement in a series of cases and concluded that a criminal defendant could establish a prima facie case of racial discrimination violative of the Fourteenth Amendment, based solely on the prosecution's use of peremptory challenges to strike members of the defendant's race from the jury venire in the defendant's case.  Batson, 476 U.S. at 93, 96-97, 106 S. Ct. at 1721-23.  Furthermore, once the defendant had made the prima facie showing, the burden shifted to the prosecution to come forward with a neutral explanation for those challenges.  Id. at 97, 106 S. Ct. at 1723.  On June 2, 1986, the Supreme Court granted certiorari in Griffith for the limited issue of whether Batson would be applied retroactively on direct appeal.  Griffith, 479 U.S. at 320, 107 S. Ct. at 711.

The retroactive application of Batson appeared to be foreclosed by United States v. Johnson, 457 U.S. 537, 102 S. Ct. 2579 (1982), in which the Supreme

8

Court had explained that, when a new rule of criminal procedure is a "clear break" with past precedent, as <u>Batson</u> was a clear break from <u>Swain</u>,[1] the new rule was not to be applied retroactively to cases on direct appeal. <u>Griffith</u>, 479 U.S. at 326, 107 S. Ct. at 715. Despite courts' repeated conclusions that the defendants had failed to satisfy <u>Swain</u>, the <u>Griffith</u> defendants continued to argue, and therefore preserve, that the government exercised its peremptory challenges in a racially discriminatory manner.

The persistence of the <u>Griffith</u> defendants paid off. The Supreme Court granted their petitions, discarded the "clear break" rule described in <u>Johnson</u>, and applied <u>Batson</u> retroactively to their appeal. <u>Griffith</u>, 479 U.S. at 326-28, 107 S. Ct. at 715-16. The Supreme Court reversed their convictions based on considerations of fairness for defendants who were similarly situated to the defendant in <u>Batson</u> – that is, defendants who, like Batson, had preserved their objections to the prosecution's race-based peremptory challenges during trial and on appeal. The <u>Griffith</u> Court did not require, however, that a dissimilarly situated defendant – one who did not preserve his objections to race-based peremptory challenges – would somehow benefit from the retroactive application of <u>Batson</u>.

<u>Griffith</u> dealt with a <u>Batson</u> situation in which the defendants properly

[1]<u>See</u> <u>Allen v. Hardy</u>, 478 U.S. 255, 106 S. Ct. 2878 (1986).

presented and preserved their constitutional challenges to the prosecution's use of peremptory strikes <u>both during trial and throughout direct review</u>. Importantly, the defendants preserved the issue by raising <u>Batson</u>-type challenges <u>before</u> the Supreme Court decided <u>Batson</u>.

Therefore, the dispute between the majority and the dissent in this case is largely over whether <u>Griffith</u>'s retroactivity rule should be extended to unpreserved error raised for the first time after a decision on the merits of a direct appeal. That is, should <u>all</u> defendants during <u>any</u> portion of direct review automatically get the benefit of retroactivity no matter when they raise the issue <u>or</u> is the application of the <u>Griffith</u> retroactivity rule subject to well-established rules regarding unpreserved error, waiver, and procedural default.

As mentioned above, <u>Griffith</u> dealt with a <u>Batson</u> claim in which the defendants properly presented and preserved their constitutional challenges to the prosecution's use of race-based peremptory strikes both during trial and throughout direct review. Therefore, <u>Griffith</u> cannot, and does not, control a situation in which the defendant, such as Levy, never raised nor preserved a constitutional challenge, but, instead, raises it for the first time in a petition for

10

rehearing after this Court has affirmed his conviction and sentence.[2]

Although the dissent dismisses the fact that the defendants in Griffith preserved their Batson-type claims, the Supreme Court has already recognized the important distinction between those litigants who preserve issues and those who do not. In Shea v. Louisiana, 479 U.S. 51, 59 105 S. Ct. 1065, 1070 (1985), which is discussed in Griffith, the Supreme Court concluded that the new rule announced in Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 (1981), applied to cases pending on direct review at the time Edwards was decided. Notably, the Shea Court stated that "[a]s we hold, if a case was pending on direct appeal at the time Edwards was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of waiver, harmless error, and the like." Shea, 479 U.S. at 58 n.4, 105 S. Ct. at 1069 n.4 (emphasis added). The dissent is unable to point to any decision where the Supreme Court applied a new constitutional rule retroactively to litigants who did not previously preserve the issue on appeal.

_____

[2]See Anders v. Hometown Mortgage Servs., Inc., 346 F.3d 1024, 1031 (11th Cir. 2003) ("[W]hile we must apply [a prior] decision to facts and circumstances sufficiently similar to those under which it arose, we are not obligated to extend the decision to different situations."); Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207 (11th Cir. 2003) ("[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision." (citation and internal marks omitted)).

11

## II. PROCEDURAL RULES

As noted above, independent of and separate from the <u>Griffith</u> holding is this Court's long-standing procedural rule that issues must be properly presented in the opening briefs before this Court is required to address them. <u>Ardley</u>, 242 F.3d at 990 (collecting cases). As the dissent admits, the <u>Ardley</u> Court, in 2001, applied this long-standing procedural rule in an <u>Apprendi</u>-context similar to the situation presented in <u>Levy</u>.

In <u>Ardley</u>, the Supreme Court remanded the defendant's case to this Court so that it could be reconsidered in light of <u>Apprendi</u>. <u>Ardley</u>, 242 F.3d at 990. The <u>Ardley</u> Court determined that the fact that the defendant failed to properly present and preserve his arguments trumped whatever merit those constitutional arguments might have, stating: "In the absence of any requirement to the contrary in either <u>Apprendi</u> or in the order remanding this case to us, we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned." <u>Ardley</u>, 242 F.3d at 990 (citing cases). This Court's procedural rule has operated independently of <u>Griffith</u> for a long time because it is not inconsistent in any way with the preserved-error <u>Batson</u> issue addressed in <u>Griffith</u>. In fact, the Supreme Court itself has recognized that the retroactivity rule is "subject, of course, to established principles of waiver, harmless error, and the

like." <u>Shea</u>, 479 U.S. at 58 n.4, 105 S. Ct. at 1069 n.4. This is another way of saying that the retroactivity rule is subject to procedural rules and does not operate in a vacuum.

Because neither <u>Griffith</u> nor any other Supreme Court decision controls the present situation, the question, in effect, is: Should this Court change its long-standing precedent and extend <u>Griffith</u> to unpreserved error or should Levy, as similar defendants in the past, be held to this Court's long-standing procedural rules?

This Court recently made that choice in <u>Ardley</u> and concluded, as explained above, that a defendant is bound by this Court's procedural rules, even in light of new constitutional rights. See <u>Ardley</u>, 242 F.3d at 990. Therefore, as the dissent concedes, circuit precedent squarely on point mandates that we conclude that <u>Levy</u> cannot raise his <u>Blakely</u>-type issues that were not properly presented and preserved. Because this Court's procedural rules require that all issues be raised in an appellant's opening brief, and Levy first raised his <u>Blakely</u>-type claim in a petition for rehearing after a decision affirming his conviction and sentence, this Court need not consider Levy's <u>Blakely</u>-type issue.

### III. ADMINISTRATION OF JUSTICE

The dissent claims that if this Court does not permit Levy to raise his

13

Blakely-type claim at this late stage, we unnecessarily invite litigants to raise a whole host of questionable issues on the off-chance the Supreme Court might reverse course on some line of precedent while their direct appeal is pending. The dissent's logic is flawed for two reasons.

First, the dissent's catastrophic predictions regarding the orderly administration of justice if this Court elects not to consider the defendant's Blakely-type claim are simply incorrect and unfounded. Rather, attorneys will continue to raise issues that are within the scope of acceptable arguments. For example, the long and useless laundry list predicted by the dissent in Ardley, and again here, has not materialized on account of the plain-error standard of review. If defendants were going to raise a long and useless laundry list of objections, they already would have been doing exactly that in the district court so objections could receive full de novo review by this Court, rather than plain-error review. See Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001) ("Plain error review is an extremely stringent form of review." (citation omitted)); United States v. King, 73 F.3d 1564, 1572 (11th Cir. 1996) ("The plain error test is difficult to meet." (quotation marks and citations omitted)).

Second, the rule announced in Ardley and Levy is not overly harsh because nothing in our precedent prevented Levy from raising his Blakely-type claim in his

14

initial brief on direct appeal . While it is correct that this Court's en banc decision in United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001) (en banc), means that his Blakely-type claim likely would have failed, that likely failure does not mean that Levy could not have made the argument to the panel and later in a petition for rehearing en banc. More importantly, Levy could have raised the argument to preserve the issue for certiorari review.

This is to say that a litigant is never precluded from raising an issue simply because a previous appeal has been decided that rejects a particular argument. This is so because there is nothing prohibiting this Court sitting en banc or the Supreme Court from reconsidering or overruling arguments that had previously been rejected. See, e.g., Engle v. Isaac, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573 (1982) ("Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.").

There is a good example of the continued availability of previously foreclosed arguments in the Apprendi line of cases. In Walton v. Arizona, 497 U.S. 639, 649, 110 S. Ct. 3047, 3054-55 (1990), the Supreme Court held that the Arizona capital sentencing scheme did not violate the Sixth Amendment because the additional facts found by the judge were sentencing considerations, not "element[s] of the offense of capital murder." After Apprendi, the Supreme Court,

15

in Ring, overruled Walton "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at 609, 122 S. Ct. at 2428. In Ring, the Supreme Court concluded that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' . . . the Sixth Amendment requires that they be found by a jury." Id. (quoting Apprendi, 530 U.S. at 494 n.19). The defendant in Ring preserved his argument under Apprendi even though that argument appeared to be foreclosed by Walton.

More significantly, after our Sanchez decision, but before the Supreme Court's Blakely decision, numerous defendants before this Court raised Apprendi-type arguments in their challenges to enhancements under the federal Sentencing Guidelines. In United States v. Petrie, 302 F.3d 1280, 1289-90 (11th Cir. 2002), cert. denied, 538 U.S. 971, 123 S. Ct. 1775 (2003), United States v. Snyder, 291 F.3d 1291, 1294 n.3 (11th Cir. 2002), and United States v. Rodriguez, 279 F.3d 947, 950 n.2 (11th Cir. 2002), the defendants asserted before this Court that the district court violated their rights to a jury trial when it enhanced their sentences because a jury did not determine beyond a reasonable doubt all facts legally essential to their sentences. These cases all came after Sanchez and before Blakely and illustrate that many defendants were asserting Apprendi-type

16

arguments about federal sentencing enhancements and that defendants have not been prevented from making that argument despite a prior adverse precedent of this Court.

More recently, in United States v. Reese, 382 F.3d 1308 (11th Cir. 2004), the defendant, despite Sanchez, preserved his Apprendi-type argument to his federal sentencing enhancements in the district court. Specifically, the district court concluded that Reese possessed a firearm in connection with another felony offense because drugs were found in the glove compartment of the vehicle Reese was driving. Reese argued to the district court and to this Court that this fact finding should have been determined by a jury beyond a reasonable doubt; namely, that the presence of the drugs constituted a felony, rather than a simple possession misdemeanor. Reese asserted that the district court's findings usurped the role of the jury and violated the core value of Apprendi. Reese, 382 F.3d at 1309.

Furthermore, because Reese properly preserved his Apprendi type argument both in the district court and this Court, this Court permitted Reese to file a supplemental letter brief and address the implications of Blakely. Reese, 382 F.3d at 1309. Levy could have done the same in his petition for rehearing if he had at least raised an Apprendi-type claim in his initial brief on appeal.

17

As shown in <u>Reese</u>, <u>Petrie</u>, <u>Snyder</u>, and <u>Rodriguez</u>, the rule in <u>Levy</u> and

<u>Ardley</u> laudably encourages counsel for defendants to become knowledgeable

about Supreme Court decisions, such as <u>Apprendi</u>, and to consider making

arguments that are based on reasonable extensions of existing Supreme Court case

law. At the time Levy filed his initial brief, lawyers were clearly on notice that

such <u>Apprendi</u>-type arguments could be reasonably advanced based on existing

Supreme Court precedent.[3] This Court's procedural rules force lawyers to look at

the applicability of such arguments at an earlier stage so that they can receive

---

[3]While an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel, attorneys routinely make arguments based on reasonable extensions of existing Supreme Court case law. The comments of the Supreme Court dissenters may have encouraged the attorneys in <u>Reese</u>, <u>Petrie</u>, <u>Snyder</u>, and <u>Rodriguez</u>. For example, in <u>Jones v. United States</u>, 526 U.S. 227, 119 S. Ct. 1215 (1999), Justice Kennedy noted:

> Departing from this recent authority, <u>the Court's sweeping constitutional discussion casts doubt on sentencing practices and assumptions followed not only in the federal system but also in many States</u>. Thus, among other unsettling consequences, today's decision intrudes upon legitimate and vital state interests, upsetting the proper federal balance. I dissent from this unfortunate and unnecessary result.

<u>Id.</u> at 254, 119 S. Ct. 1229-30 (Kennedy, J., dissenting) (emphasis added). Justice O'Connor echoed Justice Kennedy's concerns in <u>Apprendi</u>, and stated:

> <u>Justice Kennedy rightly criticized the [Jones] Court for </u>its failure to explain the origins, contours, or consequences of its purported constitutional principle; for the inconsistency of that principle with our prior cases; and for <u>the serious doubt that the holding cast on sentencing systems employed by the Federal Government and States alike</u>. Today, in what will surely be remembered as a watershed change in constitutional law, the Court imposes as a constitutional rule the principle it first identified in <u>Jones</u>.

<u>Apprendi</u>, 530 U.S. at 523-24, 120 S. Ct. at 2380 (O'Connor, J., dissenting) (emphasis added).

18

either full or, at least, plain-error review by this Court or the Supreme Court.

This Court's precedents establish a clear, consistent, and workable rule, and one that is not overly harsh.[4] As the Supreme Court has stated, "we see little reason why counsel's failure to detect a colorable constitutional claim should be treated differently from a deliberate but equally prejudicial failure by counsel to raise such a claim." Murray v. Carrier, 477 U.S. 478, 492, 106 S. Ct. 2639, 2647 (1986).

## IV. WAIVER, FORFEITURE, and ABANDONMENT

The dissent also attempts to make a distinction between waiver, forfeiture, and abandonment. However, the dissent misunderstands the issue. The issue is not whether Levy's failure to raise his Blakely-type issue necessarily constitutes waiver, forfeiture, or abandonment. Rather, the issue is whether this Court will apply its well-established procedural rules; that is, this Court will not consider claims raised in a petition for rehearing that were never raised, in any form, in a defendant's initial brief on direct appeal.

The dissent attempts to confuse the issue by discussing the difference between waiver, forfeiture, and abandonment. The issue is not whether this Court

---

[4]In fact, in Levy's case, the panel opinion already notes: "[W]e conclude that there is no miscarriage of justice if we decline to address Blakely-type issues not raised in opening briefs on appeal. Levy, 379 F.3d at 1243 n.3.

19

has the power to consider issues not raised in the initial brief; of course it does. Rather, this Court, out of concerns for judicial economy and finality, has elected to adopt and apply procedural rules universally and equally. This is not only fair and consistent, but a logical extension of the Supreme Court's decision in Shea.

In fact, the dissent's position is internally inconsistent. Although the dissent argues that this Court should permit the defendant to raise a Blakely-type claim at any point while still on direct review, the dissent recognizes that issues not raised at trial should be reviewed for plain error only. In effect, the dissent recognizes that procedural default rules relating to the timeliness of issues raised at trial should be enforced, but that this Court is without the power to enforce its own procedural default rules during the appellate process.

The dissent never explains why enforcing trial-level procedural default rules by limiting appellate review to plain error is somehow permissible under the Supreme Court's retroactivity doctrine, but enforcing appellate-level procedural default rules is not. As Judge Carnes stated in Ardley: "If the retroactivity doctrine requires that we address issues that have been procedurally defaulted on appeal, why does it not require that we address full bore those issues that have been procedurally defaulted at trial instead of limiting our review to plain error?"

20

Ardley, 273 F.3d at 993 (Carnes, J., concurring).[5]  This Court's application of well-established procedural default rules is prudent and well-established.  That is, "[t]he retroactivity doctrine either trumps the procedural default doctrine or it does not.  Our position, which is consistent, is that it does not."  Id.

## V. CONCLUSION

As in Ardley, this Court correctly denied Levy's petition for rehearing en banc.  Contrary to the dissent's arguments, Supreme Court precedent does not mandate that rules of retroactivity automatically trump all procedural rules.  Instead, Supreme Court case law clearly indicates that rules of retroactivity are subject to procedural rules, such as waiver and the like.

The uniform application of this Court's procedural default rules provides a clear, intelligent, and consistent rule for litigants to follow: raise the issue in your initial brief or risk procedural bar.  This rule applies equally to all litigants, whether the government or a criminal defendant.

---

[5]As we explained in Ardley, "[o]ne of the best indications of the narrowness of plain error review is the fact that this Court has not yet found any Apprendi error to fit within the scope of the plain error doctrine."  Ardley, 273 F.3d at 992 (Carnes, J., concurring) (collecting cases).

21

TJOFLAT, Circuit Judge, dissenting from the denial of rehearing en banc, in which WILSON, Circuit Judge, joins:

The facts of this case are set forth in detail in the panel's first opinion. See United States v. Levy, 374 F.3d 1023, 1024-29 (11th Cir. 2004). Pursuant to a written plea agreement, defendant Raphael Levy pled guilty to conspiracy to commit mail fraud and conspiracy to commit money laundering. The district court sentenced Levy to 120 months on the mail fraud charge and 48 months on the money laundering charge, with the sentences to be served consecutively, for a total sentence of 168 months. The sentence included a two-level vulnerable victim enhancement and a four-level role-in-the-offense enhancement. On June 23, 2004, the panel affirmed Levy's sentences, rejecting his claims that the Government breached his plea agreement and that the district court had deprived him of due process by allowing certain witnesses to testify at his sentencing hearing. The next day, the United States Supreme Court held that

> the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531, 2537, 159 L. Ed. 2d 403

(2004) (citations omitted).[1]  Although the Court formally "express[ed] no opinion on" the constitutionality of the Federal Sentencing Guidelines, id. at __, 124 S. Ct. at 2538 n.9, the decision has, at a minimum, "cast a long shadow over [them]." United States v. Booker, 375 F.3d 508, 510 (7th Cir. 2004), cert. granted,__ U.S. __, 125 S. Ct. 11, __ L. Ed. 2d __, (Aug. 2, 2004) (No. 04-104).  Indeed, the Court has since granted certiorari and heard oral arguments on precisely this issue.  Id.; United States v. Fanfan, __ U.S. __, 125 S. Ct. 12, __ L. Ed. 2d __, (Aug.2, 2004) (No. 04-105).

Following Blakely—and before his conviction had become final—Levy filed a petition for rehearing in which he argued for the first time that under Blakely he had a Sixth Amendment right to a jury trial on his federal sentencing enhancements.  United States v. Levy, 379 F.3d 1241, 1241-42 (11th Cir. 2004).  That this was the first time that Levy had advanced such a claim is certainly understandable given that this court unequivocally rejected the same argument in United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001).  Nevertheless, the panel refused to "entertain this new issue because Levy did not timely raise it in

---

[1] Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S. Ct. at 2362-63.

23

his initial brief on appeal." Levy, 379 F.3d at 1242.[2]

The panel's decision in this case is problematic for four reasons. First, it unjustifiably limits the principle of Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final." Id. at 328, 107 S. Ct. at 716 (emphasis added). Second, by erroneously terming Levy's failure to raise a Blakely-type claim in his opening brief a "waiver" rather than a mere "forfeiture," the decision unduly limits our scope of review under Federal Rule of Criminal Procedure 52(b), as interpreted by the Supreme Court in United States v. Olano, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Third, it continues a circuit split that finds this court standing alone.[3] Fourth, it sends a clear message to appellate counsel that they

---

[2] See also United States v. Njau, 386 F.3d 1039, 1041-42 (11th Cir. 2004) (refusing to consider a Blakely claim first raised in a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j)); United States v. Hembree, 381 F.3d 1109, 1110 (11th Cir. 2004) (denying motion to file a substitute or amended principal brief raising a Blakely claim); United States v. Curtis, 380 F.3d 1308, 1310-11 (11th Cir. 2004) (denying motion to file supplemental brief raising Blakely claim).

[3] United States v. Ardley, 242 F.3d 989, reh'g en banc denied, 273 F.3d 991 (11th Cir. 2001), created this circuit split by refusing to consider an Apprendi claim in a case in which the Supreme Court GVR'd in light of Apprendi—i.e., granted the petition for certiorari, vacated our initial judgment, and remanded for reconsideration in light of Apprendi. See 242 F.3d at 990 (concluding that nothing in the standard GVR requires a court of appeals to consider arguments not raised in a defendant's initial brief on appeal). But see Stutson v. United States, 516 U.S. 193, 197, 116 S. Ct. 600, 603, 133 L. Ed. 2d 571 (1996) ("a GVR order both promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially relevant

24

should brief every colorable claim—even those claims that are squarely foreclosed by our own precedent—or else risk costing their clients the benefit of a favorable intervening decision.[4]  As a result, counsel will be tempted to be less discriminating in selecting issues to be argued on appeal, and briefs will necessarily be less specific and clear, which will in turn significantly hinder the fair and efficient administration of justice in this circuit.  For these reasons, I dissent from the denial of rehearing en banc.

## I.

In <u>Griffith</u>, the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to <u>all</u> cases . . . pending on direct review or not yet final."  479 U.S. at 328, 107 S. Ct. at 716 (emphasis added).  A case is "final" and thus outside the scope of <u>Griffith</u> only when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally

---

decisions <u>and arguments</u> that were not previously before it" (emphasis added)).

[4] <u>Compare with</u> <u>United States v. Battle</u>, 163 F.3d 1, 1-2 (11th Cir. 1998) (citations omitted):
Even in a death-penalty case, the court expects counsel to be highly selective about the issues to be argued on appeal . . . .
    . . . .
    The Supreme Court of the United States has . . . stressed . . . that the best advocacy relies on selectivity.  It is well settled that counsel need not "raise every 'colorable' claim" on appeal.

25

denied." Id. at 321 n.6, 107 S. Ct. at 712 n.6. Any failure to adhere to this clear

rule "violates basic norms of constitutional adjudication" for two reasons:

> First, it is a settled principle that this Court adjudicates only "cases"
> and "controversies." Unlike a legislature, we do not promulgate new
> rules of constitutional criminal procedure on a broad basis. Rather,
> the nature of judicial review requires that we adjudicate specific
> cases, and each case usually becomes the vehicle for announcement
> of a new rule. But after we have decided a new rule in the case
> selected, the integrity of judicial review requires that we apply that
> rule to all similar cases pending on direct review.
> . . . .
> Second, selective application of new rules violates the principle
> of treating similarly situated defendants the same. . . . [T]he problem
> with not applying new rules to cases pending on direct review is "the
> actual inequity that results when the Court chooses which of many
> similarly situated defendants should be the chance beneficiary" of a
> new rule.

Id. at 322-23, 107 S. Ct. at 713 (quoting United States v. Johnson, 457 U.S. 537,

556 n.16, 102 S. Ct. 2579, 2590 n.16, 73 L. Ed. 2d 202 (1982)). The Court further

noted that because it cannot, "[a]s a practical matter, . . . hear each case pending on

direct review and apply the new rule," it "fulfill[s] [its] judicial responsibility by

instructing the lower courts to apply the new rule retroactively to cases not yet

final." Griffith, 479 U.S. at 323, 107 S. Ct. at 713.

Applying this rule in criminal cases, the Court has never drawn distinctions

26

among defendants on any basis other than the finality of their convictions.[5]  In

Griffith, for example, the Court discarded the "clear break" exception to

retroactivity because it concluded that the fact that a decision is a clear break with

precedent simply "has no bearing on the 'actual inequity that results' when only

one of many similarly situated defendants receives the benefit of the new rule" or

the principle that a court must "not disregard current law[] when it adjudicates a

case pending before it on direct review."  Id. at 326-27, 107 S. Ct. at 715-16

(quoting Johnson, 457 U.S. at 556 n.16, 102 S. Ct. 2591 n.16).  Likewise, in this

case, it is difficult to see how the fact that Levy's brief omitted a claim that was

then squarely foreclosed by our own precedent either mitigates the "actual inequity

that results" from distinguishing between Levy and a similarly situated defendant

who did raise the issue (perhaps only because his lawyer had not even read

Sanchez) or justifies our disregarding the law as it now stands.

The only distinction the Court has made for purposes of retroactivity in

---

[5] See, e.g., Teague v. Lane, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."); Griffith, 479 U.S. at 328, 107 S. Ct. at 716 (holding "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past"); Johnson, 457 U.S. at 556 & n.17, 102 S. Ct. at 2591 & n.17 (holding that in Fourth Amendment cases "all nonfinal convictions" must be decided "under the same rule of law" and rejecting the alternative standards for retroactivity).

criminal cases is between direct and collateral review: "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague v. Lane, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334 (1989) . This distinction is not simply one of convenience, but rather derives from the very function and purpose of federal habeas corpus:

> [T]he threat of habeas corpus serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards. In order to perform this deterrence function, . . . the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.

Id. at 306, 109 S. Ct. at 1073 (quoting Desist v. United States, 394 U.S. 244, 262-63, 89 S. Ct. 1030, 1041, 22 L. Ed. 2d 248 (1969) (Harlan, J., dissenting)). Thus, because habeas does not exist simply to serve some "perceived need to assure that an individual accused of a crime is afforded a trial free of constitutional error," weighty "interests of comity and finality" have persuaded the Court that new rules governing criminal prosecutions should not be applied retroactively in cases that are already final. Teague, 489 U.S. at 308, 109 S. Ct. at 1074. These interests do not, however, apply to direct appeals from federal convictions. Comity, of course, is an issue only where a federal habeas court reviews a state conviction. And an

28

interest in finality weighs in favor of addressing Levy's claims now, for he will certainly raise them on collateral review if we do not.[6]

Griffith's holding is therefore clear: retroactivity extends to all cases still pending on direct review. There is simply nothing in the opinion to suggest that a defendant must raise the issue in his initial appellate brief in order to receive the benefit of retroactivity. To the contrary, it consistently refers to all cases or all convictions not yet final. Griffith, 479 U.S. at 323, 324, 328, 107 S. Ct. at 713, 716 (emphasis added). That the defendant in Griffith advanced the argument that ultimately resulted in the new rule is, of course, true, but the Court in no way emphasized this fact or made it a part of its holding. Therefore, while it is also true that the Griffith Court was concerned that "selective application of new rules violates the principle of treating similarly situated defendants the same," any suggestion that Levy is dissimilarly situated simply because he failed to predict Blakely in his initial brief overlooks the next three sentences of the opinion, which refer to "cases pending on direct review," "cases on direct review," and "all convictions . . . not yet final." Id. at 323-24, 107 S. Ct. at 713. Griffith therefore

---

[6] Concurring in the denial of rehearing en banc in Ardley, Judge Carnes emphasized that our precedent foreclosed any Apprendi-based habeas claims the defendant, whose situation was much like Levy's, might bring. See 273 F.3d at 993-94. But the fact that Levy is unlikely to succeed on collateral review does not mean that he cannot try, which means that a district court will in all likelihood have to address this claim and, ultimately, that we will as well, at least in the form of an application for a certificate of appealability.

requires us to consider Levy's claim because <u>Blakely</u> was decided before his conviction became final.[7]

Levy may, of course, raise his <u>Blakely</u> claim on collateral review, either as a substantive <u>Blakely</u> claim or in the form of an ineffective assistance claim. If, however, we consider how such claims will be received, it becomes even clearer that <u>Griffith</u> requires us to consider them on direct review notwithstanding their omission from Levy's initial brief. On one hand, it appears unlikely that in a 28 U.S.C. § 2255 proceeding Levy will be able to establish "cause" for his failure to raise a timely <u>Blakely</u> claim on direct review. See <u>McCoy v. United States</u>, 266 F.3d 1245, 1258-59 (11th Cir. 2001) (holding that neither the novelty of, nor

---

[7] In <u>Shea v. Louisiana</u>, 470 U.S. 51, 58 n.4, 105 S. Ct. 1065, 1069 n.4, 84 L. Ed. 2d 38 (1985), the Court discussed the retroactive application of <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), as follows:

> As we hold, if a case was pending on direct review at the time <u>Edwards</u> was decided, the appellate court must give retroactive effect to <u>Edwards</u>, subject, of course, to established principles of waiver, harmless error, and the like. If it does not, then a court conducting collateral review of such a conviction should rectify the error and apply <u>Edwards</u> retroactively.

As in <u>Griffith</u>, retroactivity is phrased in mandatory terms: if a case is pending on direct review when a new rule is announced, appellate courts <u>must</u> give the decision retroactive effect. The Court does say that retroactivity is "subject . . . to established principles of waiver." But as is discussed in Part II, <u>infra</u>, the panel's conclusion that "Levy . . . waived his <u>Blakely</u>-type claim by not raising it in his initial brief on appeal," <u>Levy</u>, 379 F.3d at 1245, is flatly inconsistent with Supreme Court precedent on the meaning of "waiver," and therefore does not support limiting retroactivity or precluding review under Federal Rule of Criminal Procedure 52(b).

The Court also states here that if a new rule is not given retroactive effect on direct review, "then a court conducting collateral review . . . should rectify the error and apply [it] retroactively." Thus, because other circuits do not consider claims like Levy's "waived," if a state court outside this circuit did not apply <u>Blakely</u> retroactively in a direct appeal like this one, a federal habeas court would "rectify the error" and apply it retroactively on collateral review.

perceived futility of raising, an <u>Apprendi</u> claim constitutes "cause" for failure to raise the issue on direct review).  And on the other hand, an ineffective assistance claim based on counsel's failure to raise the <u>Blakely</u> issue in his initial brief also appears unlikely to succeed.  <u>See, e.g.</u>, <u>Pitts v. Cook</u>, 923 F.2d 1568, 1573-74 (11th Cir. 1991) (holding that counsel's failure to raise a <u>Batson</u>-type claim pre-<u>Batson</u> did not constitute ineffective assistance of counsel and that counsel's failure to be "innovative" will rarely, if ever, support such a claim);  <u>Brown v. United States</u>, 311 F.3d 875, 878 (8th Cir. 2002) (holding that counsel's failure to raise an <u>Apprendi</u> claim on direct appeal does not constitute ineffective assistance of counsel "simply because the court [previously held] that an <u>Apprendi</u>-type challenge was reasonably available" at the time of direct appeal).

We have previously concluded that such "a 'gap' between the spheres of novelty and ineffective assistance of counsel" is not problematic, but is merely a function of the scope of "cause" on the one hand and "ineffective assistance" on the other.  <u>See</u> <u>Pitts</u>, 923 F.2d at 1573.  But when the rule established in <u>United States v. Ardley</u>, 242 F.3d 989, <u>reh'g en banc denied</u>, 273 F.3d 991 (11th Cir. 2001) and followed here is applied in a "gap" case, the upshot is that a new rule governing criminal prosecutions that should be retroactively applicable to all cases still pending on direct review becomes completely unavailable to a defendant such

as Levy—whose appeal was pending when the rule was announced—in any form on either direct or collateral review.  Thus, Levy's <u>Blakely</u> claim will end up receiving the same treatment as a prisoner whose conviction was already final when <u>Blakely</u> was decided, thereby rendering the distinction <u>Griffith</u> and <u>Teague</u> draw between final and non-final convictions meaningless.

Moreover, the fact that Levy's potential ineffective assistance claim is unlikely to succeed illustrates a further point: the <u>Ardley</u>-<u>Levy</u> rule effectively limits retroactivity in cases such as Levy's to defendants whose counsel was "innovative" (<u>Pitts</u>, <u>supra</u>)—i.e., better than just "effective."  Yet the quality of a defendant's lawyer is clearly irrelevant to <u>Griffith</u>'s rationale that "similarly situated defendants" should be treated "the same" and that "the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review."  <u>Griffith</u>, 479 U.S. at 322-23, 107 S. Ct. at 713.  Indeed, in cases such as this one, the <u>Ardley</u>-<u>Levy</u> rule effectively recreates the very clear break exception that the <u>Griffith</u> Court rejected—i.e., because counsel is unlikely to press claims that would require a clear break with precedent, <u>Ardley</u>-<u>Levy</u> will deprive the client of the benefit of retroactivity should that clear break subsequently occur.

In <u>Ardley</u> and again here, this court "has essentially superimposed an additional requirement onto retroactivity determinations.  While the Supreme

32

Court has clearly stated that all cases pending on direct appeal at the time of an intervening decision are entitled to the benefit of a new rule, the panel's decision narrows the class of cases entitled to retroactivity." Ardley, 273 F.3d at 999 (Tjoflat, J., dissenting from the denial of rehearing en banc). This continues to be the only circuit in which "cases are entitled to the benefit of an intervening decision only if: 1) the case was not yet final at the time of the intervening decision; and 2) the litigant presaged the intervening decision by raising the issue addressed by that decision in the litigant's initial brief on appeal." Id. Perhaps Ardley and Levy are only an attempt to limit the impact of the Supreme Court's recent watershed sentencing decisions. See Douglas A. Berman, Do-overs?, Sentencing Law and Policy, Aug. 4, 2004, at http://sentencing.typepad.com/sentencing_law_and_policy/2004/08/doovers.html (noting that "the potential number of sentencing 'do-overs' after Blakely is mind-boggling" and citing Levy as "evidence that lower courts are going to resist 'do-overs' however they can"). But when the Supreme Court decided Griffith, it was well aware that extending retroactivity to all cases pending on direct review would cause such disruption in the lower courts. In other words, the Court has already weighed the "reliance by law enforcement authorities on the old standards and effect on the administration of justice of a retroactive application of the new rule"

33

against the equality and institutional concerns discussed above and determined retroactivity should extend "to <u>all</u> cases . . . pending on direct review or not yet final." <u>Griffith</u>, 479 U.S. at 324-25, 328, 107 S. Ct. at 714, 716 (emphasis added). As a court of appeals, we cannot now reevaluate such considerations on a case-by-case basis—<u>Griffith</u> made this decision for us.

## II.

"A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). "If a legal rule was violated during the district court proceedings, <u>and if the defendant did not waive the rule</u>, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." <u>Olano</u>, 507 U.S. at 732-33, 113 S. Ct. at 1777 (emphasis added). The panel held that "Levy . . . <u>waived</u> his <u>Blakely</u>-type claim by not raising it in his initial brief on appeal." <u>Levy</u>, 379 F.3d at 1245 (emphasis added). Although the panel opinion suggests that this conclusion is straightforward and uncontroversial, it is not; in fact, a finding of "waiver" is critical to the issue presented by Levy's petition for rehearing. This is because "[m]ere <u>forfeiture</u>, as opposed to <u>waiver</u>, does not extinguish an 'error' under Rule

52(b)." Olano, 507 U.S. at 733, 113 S. Ct. at 1777 (emphasis added).[8]

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). Here, Levy was unaware of a Sixth Amendment right to a jury trial on his federal sentencing enhancements until Blakely was decided. Indeed, Levy's first brief was filed more than a year before the Court granted certiorari in Blakely,[9] and our decision in Sanchez specifically held that he had no such right, see 269 F.3d at 1262. As such, it simply makes no sense to say that Levy "waived" his Blakely claim, as no such "known right"

---

[8] Tellingly, Rule 52(b) refers to errors "not brought to the court's attention," not errors not brought to the trial court's attention. This is because the rule was intended not only to allow appellate courts to correct errors not objected to at trial, but also to allow them to correct errors not raised on appeal. The 1944 advisory committee note thus describes the rule as a "restatement of existing law" and cites former Supreme Court Rule 27, which "provide[d] that errors not specified will be disregarded, 'save as the court, at its option, may notice a plain error not assigned or specified.'" The Supreme Court has also noted that Rule 52(b) "codified" the plain error "standard laid down in United States v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)." United States v. Young, 470 U.S. 1, 6-7, 105 S. Ct. 1038, 1042, 84 L. Ed. 2d 1 (1985). Atkinson held that, "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken." 297 U.S. at 160, 56 S. Ct. at 392. Thus, Rule 52(b) does not distinguish between trial-level and appellate-level forfeitures; rather, the crucial issue is whether the claim was waived or only forfeited. See Olano, 507 U.S. at 732-34, 113 S. Ct. at 1777.

[9] Levy's first brief was filed on May 21, 2002. The Supreme Court granted certiorari in Blakely on October 20, 2003. Blakely v. Washington, __ U.S. __, 124 S. Ct. 429, 157 L. Ed. 2d 309 (2003).

35

existed when Levy filed his brief.[10]  Unsurprisingly, none of the authorities the

Olano Court cited to explain the critical distinction between waiver and

forfeiture[11] articulates that distinction in a manner that supports classifying Levy's

unknowing omission as a waiver.  Olano, 507 U.S. at 733, 113 S. Ct. at 1777.[12]

---

[10] I realize that we regularly refer to a failure to brief an issue as a "waived." See, e.g., United States v. Veltman, 6 F.3d 1483, 1493 (11th Cir. 1993).  In a typical criminal appeal—i.e., when a defendant's claim is not based on a new rule announced by a decision that postdates his initial brief—this is the correct terminology.  Thus, a defendant whose lawyer fails to raise a claim based on a case decided before the defendant's brief is filed can be said to have "waived" the claim (and thus the right to have the decision retroactively applied in his case).  Such a defendant would be relegated to bringing an ineffective assistance claim rather than one based directly on the intervening decision.  But as explained in this Part and recognized by the other courts of appeals that have addressed the issue, cases such as Levy's are different because a defendant cannot intentionally relinquish a right that has not yet evolved.

[11] See, e.g., Freytag v. Comm'r, 501 U.S. 868, 894 n.2, 111 S. Ct. 2631, 2647 n.2, 115 L. Ed. 2d 764 (1991) (Scalia, J., concurring in part and concurring in judgment) ("Waiver, the intentional relinquishment or abandonment of a known right or privilege, is merely one means by which a forfeiture may occur.  Some rights may be forfeited by means short of waiver, but others may not.  A right that cannot be waived cannot be forfeited by other means (at least in the same proceeding), but the converse is not true.  In this case, petitioners expressly consented to the Special Trial Judge's role.  As far as my analysis is concerned, however, it would not matter if an even more inadvertent forfeiture were involved—that is, if petitioners had not even consented but had merely failed to object in timely fashion." (citations and quotation marks omitted)); Ralph S. Spritzer, Criminal Waiver, Procedural Default and the Burger Court, 126 U. Pa. L. Rev. 473, 475 (1978) ("first, he who 'waives' must have a minimal degree of personal awareness (how much will depend on the context) of what is being relinquished; second, the relinquishment must be a matter of personal choice"); Peter Westen, Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure, 75 Mich. L. Rev. 1214, 1214-15 (1977) ("The significant difference between waiver and forfeiture is that a defendant can forfeit his defenses without ever having made a deliberate, informed decision to relinquish them . . . . Unlike waiver, forfeiture occurs by operation of law without regard to the defendant's state of mind.").

[12] Levy's Blakely claim asserts a violation of his Sixth Amendment right to a trial by jury on his federal sentencing enhancements.  A valid waiver of the right to a jury trial requires a defendant's "express, intelligent consent" and must be "approved by the responsible judgment of the trial court." Adams v. United States ex rel. McCann, 317 U.S. 269, 277, 63 S. Ct. 236, 241, 87 L. Ed. 268 (1942).  Indeed, under Federal Rule of Criminal Procedure 23(a), "[i]f the

On this point, our court is undeniably in conflict with several other ciruits. For example, in United States v. Rogers, 118 F.3d 466, 471 (6th Cir. 1997), the Sixth Circuit rejected the Government's argument that the defendant had "waived" a claim based on a then-recent Supreme Court decision by failing to object at trial or advance the claim in his initial brief.  The court's reasoning was simple: "[o]f course, [the defendant] could not have knowingly waived a constitutional right that evolved after he filed his appellate brief because raising the issue would have been futile in light of then-applicable precedent."  Id.  Similarly, in a case in which "Apprendi was decided after briefing and one of the defendants refer[red] [the court] to the new decision in his post-argument brief,"  the Fifth Circuit concluded that it was "not completely accurate to characterize the issue as waived or abandoned" and thus considered the claim under the plain error standard.  United States v. Miranda, 248 F.3d 434, 444 (5th Cir. 2001).  And finally, in a recent case that was briefed and argued pre-Blakely, the Seventh Circuit reasoned that "[g]iven the precedent in this circuit prior to Blakely, we think it would be unfair to characterize [the defendant] as having waived a challenge to the validity of her sentencing enhancement."  United States v. Pree, 384 F.3d 378, 396 (7th Cir.

defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves."

2004); accord United States v. Henningsen, 387 F.3d 585, 591 (7th Cir. 2004).

Indeed, the court raised the issue sua sponte and concluded that there had been no

waiver notwithstanding the defendant's failure to raise the Blakely issue in any

sort of post-Blakely submission. Pree, 384 F.3d at 396-97.

In addition to these cases, it appears that every other circuit is willing to

consider claims like Levy's despite the ordinary rule that issues not briefed are

deemed waived. See infra Part III. Although other circuits have not addressed the

waiver/forfeiture distinction directly, the fact that these courts have considered the

merits of such claims does seem to imply agreement with the reasoning of the

Fifth, Sixth, and Seventh Circuits. Indeed, that such claims are cognizable under

Rule 52(b) notwithstanding a defendant's failure to include them in his initial brief

may have been thought so obvious as to not merit discussion.

### III.

The panel opinion in this case contends that "our practice" of refusing to

consider claims like Levy's is "longstanding." Levy, 379 F.3d at 1244. This

simply is not the case. While the panel does catalogue a litany of cases in which

we refused to consider claims not raised in initial briefs, it cites no pre-Apprendi

case in which we refused to consider a claim based on a new rule announced after

a criminal defendant filed his first brief. In other words, while in the ordinary case

38

it is our longstanding practice to consider only claims actually presented in initial

briefs, our refusal to consider the merits of claims such as Levy's is a recent

phenomenon.  Indeed, the practice dates back less than four years to <u>Ardley</u>.[13]

---

[13] The only pre-<u>Ardley</u> case the panel cites that is even arguably on point is <u>McGinnis v. Ingram Equip. Co.</u>, 918 F.2d 1491 (11th Cir. 1990) (en banc), in which we held that a civil defendant waived its right to argue that discriminatory demotion and discharge were not actionable under 42 U.S.C. § 1981 by failing to make the argument at trial or in its initial brief, even though the Supreme Court case that established this new rule was not decided until after the defendant's brief was filed.  As we have recognized, however, "criminal cases [are] a realm which is wholly distinct (as far as retroactivity is concerned) from civil cases."  <u>McKinney v. Pate</u>, 20 F.3d 1550, 1566 (11th Cir. 1994) (en banc).  Therefore, while the issues-not-briefed-are-waived rule may limit retroactivity in civil cases, <u>see</u> <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 544, 111 S. Ct. 2439, 2448, 115 L. Ed. 2d 481 (1991) (Souter, J.) ("when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others <u>not barred by procedural requirements or res judicata</u>" (emphasis added)), the Court has never suggested as much in the criminal context.

Moreover, while Rule 52(b) provides an explicit exception to the contemporaneous objection rule in criminal cases, there is no similar exception that is directly applicable in civil cases.  Therefore, although we have held that the rule applies by analogy so that in exceptional circumstances we may notice plain error in civil cases, <u>see, e.g.</u>, <u>S.E.C. v. Diversified Corporate Consulting Group</u>, 378 F.3d 1219, 1227 n.14 (11th Cir. 2004), we have also reasoned that its scope is significantly narrower in that context, <u>see, e.g.</u>, <u>id.</u>; <u>Maiz v. Virani</u>, 253 F.3d 641, 676-77 (11th Cir. 2001); <u>Oxford Furniture Cos., v. Drexel Heritage Furnishings, Inc.</u>, 984 F.2d 1118, 1128 (11th Cir. 1993); <u>see</u> <u>also</u> <u>Danco, Inc. v. Wal-Mart Stores, Inc.</u>, 178 F.3d 8, 15 (1st Cir. 1999) (noting that the requirements of the plain error rule are applied "even more stringently" in civil cases); <u>Fashauer v. New Jersey Transit Rail Operations, Inc.</u>, 57 F.3d 1269, 1289 (3d Cir. 1995) ("If anything, the plain error power in the civil context—which is judicially rather than statutorily created—should be used even more sparingly.").  Additionally, it is not even clear that plain error review could have helped the defendant in <u>McGinnis</u>.  <u>Johnson v. United States</u>, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (discussed in Part IV, <u>infra</u>), which clarified that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration," <u>id.</u> at 468, 117 S. Ct. at 1549, was decided seven years after <u>McGinnis</u>.  Thus, when <u>McGinnis</u> was decided, it was not clear that a litigant—in either a civil or a criminal case—in the position of the defendant in that case could ever benefit from a favorable intervening decision even if the court were to address the newly raised claim on the merits.  <u>See</u> <u>Olano</u>, 507 U.S. at 734, 113 S. Ct. at 1777 ("We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified."); <u>United States v. Vazquez</u>, 53 F.3d 1216, 1222 n.6 (11th Cir. 1995) (noting a circuit split as to whether the error

39

Prior to Ardley, we addressed the merits of claims like Levy's on several occasions. See, e.g., United States v. Candelario, 240 F.3d 1300, 1311 (11th Cir. 2001) ("[Defendant] did not raise a constitutional objection on Apprendi grounds until he filed a petition for rehearing and suggestion for rehearing en banc . . . . We therefore may only review the claim for plain error."); United States v. Calhoon, 97 F.3d 518, 529 (11th Cir. 1996) (reviewing for plain error a claim based on the then-recent decision in United States v. Gaudin, 515 U.S. 506, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995), that was first raised in the defendant's reply brief).

The panel dismisses these pre-Ardley cases because, among other things, they "do not mention, much less discuss, . . . any of the binding, prior panel precedents, which preclude the raising of new issues in rehearing petitions and in supplemental and reply briefs" or "discuss or cite any authority for considering the merits of new issues not raised in an appellant's initial brief." Levy, 379 F.3d at 1245. As explained just above, however, the cases to which the panel refers were not in fact "binding, prior panel precedents" because they do not concern new rules for the conduct of criminal prosecutions made retroactively applicable by

_____

must be plain at trial and declining to answer that question). Indeed, because Johnson interpreted the Federal Rules of Criminal Procedure, it is still not clear that it applies in civil cases.

In short, McGinnis does not support Ardley or the result here because criminal and civil retroactivity are "wholly distinct" issues, and because plain error review is significantly narrower in civil cases and may not be available at all in a case like McGinnis.

40

Griffith. Thus, because these cases were (and are) not on point, there was no reason for the panels in cases such as Candelario or Calhoon to have discussed them. Moreover, because the defendants in those cases had not "waived" Griffith retroactivity or plain error review under Rule 52(b), see supra Parts I-II, there was also no need for those panels to "cite any authority for considering the merits of" their claims—indeed, because the defendants' claims were not precluded, those panels would have needed to locate authority only if they had decided not to consider the claims.

In other circuits, the law is consistent with our own pre-Ardley cases—that is, courts consider claims like Levy's as a matter of course. Indeed, in the aftermath of Blakely, such cases can be found on a nearly daily basis. Following Apprendi, a number of courts faced this precise issue, and all (except for this court[14]) reached the merits of claims like Levy's.[15] The same has been true post-

---

[14] See supra note 3.

[15] United States v. Clinton, 256 F.3d 311, 313 (5th Cir. 2001) (on remand from the Supreme Court, reviewing for plain error an Apprendi claims not raised in the district court or in the defendant's initial appeal); United States v. Delgado, 256 F.3d 264, 280 (5th Cir. 2001) (reviewing for plain error Apprendi claim first made in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief); United States v. Cernobyl, 255 F.3d 1215, 1216, 1218 (10th Cir. 2001) (same); United States v. Miranda, 248 F.3d 434, 443-44 (5th Cir. 2001) (same); United States v. Garcia, 242 F.3d 593, 599 & n.5 (5th Cir. 2001) (same); United States v. Terry, 240 F.3d 65, 72-73 (1st Cir. 2001) (same); United States v. White, 238 F.3d 537, 541 (4th Cir. 2001) (same); United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001) (same); United States v. Poulack, 236 F.3d 932, 935-37 (8th Cir. 2001) (same); see also People v. Lathon, 740 N.E. 2d 377, 380 (Ill. App. Ct. 2000) ("The State argues that defendant has

41

<u>Blakely</u>.[16]

---

waived any challenge to the constitutionality of his sentence . . . .  The defense [relies on <u>Griffith v. Kentucky</u>].  Defendant's case was pending on direct review when <u>Apprendi</u> was decided.  The <u>Apprendi</u> opinion was issued by the United States Supreme Court the same day the original order in this case was issued and therefore <u>Apprendi</u> was properly raised by defendant in the petition for rehearing.").  As I acknowledged in my dissent from the denial of rehearing en banc in <u>Ardley</u>, the First Circuit's position was not especially well-defined post-<u>Apprendi</u>.  <u>See</u> <u>Ardley</u>, 273 F.3d at 1001 n.13.  In <u>Terry</u>, <u>supra</u>, the court analyzed an <u>Apprendi</u> claim under the plain error standard even though the defendant had not raised the issue at trial or in his initial brief.  But in <u>United States v. Padro Burgos</u>, 239 F.3d 72, 77 n.3 (1st Cir. 2001), the court denied the defendant's motion to raise an <u>Apprendi</u> claim in a supplemental brief "without prejudice to his right to raise <u>Apprendi</u> by way of an application for collateral relief in the event his direct appeal failed."  The First Circuit's post-<u>Blakely</u> pronouncements on this question, however, seem to clarify that a claim like Levy's is not waived simply because it is not raised in the defendant's initial brief.  <u>See, e.g.</u>, <u>United States v. Cordoza-Estrada</u>, 385 F.3d 56, 59 (1st Cir. 2004) ("Since Appellant's argument depends upon a decision that did not exist at the time of briefing, a [Rule 28(j) letter filed the day before oral argument] is a perfectly appropriate avenue by which to present it . . . .").

[16] <u>See, e.g.</u>, <u>United States v. Glenn</u>, __ F.3d__, 2004 WL 2676766, at *4 (1st Cir. Nov. 24, 2004) (reviewing for plain error a <u>Blakely</u> claim first raised in a supplemental brief); <u>United States v. Stearns</u>, 387 F.3d 104, 106-07 (1st Cir. 2004) (reviewing for plain error a <u>Blakely</u> claim first raised in a post-oral argument letter); <u>United States v. Satterfield</u>, 2004 WL 2491574, at *1 (4th Cir. Nov. 5, 2004) (unpublished op.) (reviewing for plain error <u>Blakely</u> claim first raised in a supplemental brief); <u>Henningsen</u>, 387 F.3d at 591 ("Although [the defendant] did not raise the [<u>Blakely</u>] issue . . . in his brief, he made notice of the <u>Blakely</u> and <u>Booker</u> decisions in a subsequent filing and raised the issue during argument.  In light of the uncertainty surrounding this issue and the questionable constitutionality of [his] sentencing enhancement, we do not find that [he] has waived his [claim].");  <u>United States v. Griffith</u>, 385 F.3d 124, 127 (2d Cir. 2004) (ordering that, notwithstanding the defendant's failure to raise a <u>Blakely</u>-type claim in his initial brief, "the mandate in this case will be held pending the Supreme Court's decision in <u>Booker</u> and <u>Fanfan</u>" and that "the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing"); <u>United States v. Moore</u>, 109 Fed. Appx. 503, 505 n.2, 2004 WL 2241169, at *2 n.2 (3d Cir. 2004) (unpublished op.) (noting that a <u>Blakely</u> claim that was first raised in a supplemental brief would be reviewed for plain error but declining to grant the defendant's motion to file such a brief because it was clear that he could not establish plain error); <u>United States v. Cordoza-Estrada</u>, 385 F.3d 56, 59 (1st Cir. 2004) (reviewing for plain error a <u>Blakely</u> claim first raised in a Rule 28(j) letter sent to the court the day before oral argument and noting that "[s]ince Appellant's argument depends upon a decision that did not exist at the time of briefing, a 28(j) letter is a perfectly appropriate avenue by which to present it"); <u>Pree</u>, 384 F.3d at 396-97 (raising <u>Blakely</u> issue <u>sua sponte</u>); <u>United States v. Pepsny</u>, 108 Fed. Appx. 713, 716-17, 2004 WL 1873996, at *3 (3d Cir. 2004) (unpublished op.) (remanding

for re-sentencing on non-Blakely grounds and stating that a defendant who first raised a Blakely claim in a post-argument filing could attempt to raise the Blakely issue on remand); United States v. Musleh, 106 Fed. Appx. 850, 857 n.4, 2004 WL 1858247, at *5 n.4 (4th Cir. 2004) (unpublished op.) ("The Supreme Court issued its decision in [Blakely], shortly after we heard oral argument in this case. [Although the defendant had not raised a Blakely-type claim, we] then sua sponte ordered the parties to submit supplemental briefing respecting the effect of Blakely on the Federal Sentencing Guidelines."); United States v. Badilla, 383 F.3d 1137, 1142 n.2 (10th Cir. 2004) (reviewing for plain error a Blakely claim that was first raised in a motion for post-submission consideration); United States v. Westover, 107 Fed. Appx. 840, 847, 2004 WL 1790016, at *6 (10th Cir. 2004) (rejecting all claims raised in the defendant's brief but retaining jurisdiction and permitting a supplemental "brief to raise additional issues in light of Blakely," which was "decided after initial briefing and argument"); United States v. Ameline, 376 F.3d 967, 974 (9th Cir. 2004) ("Our precedent provides ample support for our authority to consider sua sponte a [Blakely] claim that was not initially raised on appeal.").

In one unpublished decision, the Tenth Circuit refused to consider a Blakely claim raised in a letter submitted to the court pursuant to Federal Rule of Appellate Procedure 28(j), citing Levy. United States v. Rosales, 2004 WL 2307370, at *6 (10th Cir. Oct. 14, 2004). In other cases, that court has declined to consider Blakely claims raised in Rule 28(j) letters "because [the defendant] did not ask to file a brief raising a proper Blakely challenge." United States v. Maldonado-Ramires, 384 F.3d 1228, 1230 n.1 (10th Cir. 2004); see, e.g., United States v. Horn, 2004 WL 2407131, at *2 (10th Cir. Oct. 28, 2004) (unpublished op.). While at first glance these cases might appear to conflict with the Tenth Circuit's decisions in Westover and Badilla, noted above, the more likely explanation is that the court was holding only that a Rule 28(j) letter is not a proper vehicle for raising a new argument—i.e., Rule 28(j) letters should be used only to identify new authority relating to arguments already raised—and that the defendant waived his right to raise a Blakely claim by not properly seeking permission to file a supplemental brief. Indeed, in one case the court specifically cited Badilla for the proposition that plain error review would apply if the defendant had properly raised the issue in a brief. Maldonado-Ramires, 384 F.3d at 1230 n.1. And in other cases, the court relied on United States v. Kimler, 335 F.3d 1132, 1138 n. 6 (10th Cir.2003), which states: "We will not address issues not raised in the appellant's opening brief, especially where the arguments are based on authority that was readily available at the time of briefing." See, e.g., Horn, at *2. Moreover, as noted in note 15, supra, the Tenth Circuit considered Apprendi-based claims under similar circumstances. See Cernobyl, 255 F.3d at 1216, 1218 (reviewing for plain error Apprendi claim first raised in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief). Thus, taken together, these cases suggest that the Tenth Circuit will consider claims such as Levy's as long as the defendant properly seeks to raise them in a supplemental brief.

Similarly, in an unpublished opinion, an Eighth Circuit panel without any explanation denied a motion to file a supplemental brief in light of Blakely. United States v. Castillo-Torrecilla, 111 Fed. Appx. 444, 445, 2004 WL 2341791, at *1 (8th Cir. 2004). This decision, however, appears to conflict with that court's administrative order regarding Blakely cases and recent published decisions, which suggest that the Eighth Circuit will hold the mandate in all

Blakely cases and consider Blakely claims after Booker and Fanfan are decided.  See, e.g., Administrative Order Regarding Blakely Cases (8th Cir. Sept. 27, 2004), at http://www.ca8.uscourts.gov/files/blakelyfinal.pdf; United States v. Babiar, __ F.3d __ 2004 WL 2694882, at *1 n.2 (8th Cir. Nov. 29, 2004); United States v. Pierce, __ F.3d __, 2004 WL 2520499, at n.2 (8th Cir. Nov. 9, 2004); see also United States v. Pirani, 2004 U.S. App. LEXIS 16117, at *21-36 (8th Cir. Aug. 5, 2004) (reviewing for plain error Blakely claim first raised after oral argument), op. vacated and reh'g en banc granted, 2004 U.S. App. LEXIS 17012 (8th Cir. Aug. 16, 2004); United States v. Poulack, 236 F.3d 932, 935-37 (8th Cir. 2001) (reviewing for plain error Apprendi claim first made in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief).  In another recent Eighth Circuit case, a defendant argued that he should be allowed to raise a Blakely claim for the first time in his reply brief because "(1) Blakely was decided 'shortly after the drafting of [his] appeal had begun,' and (2) 'the decision was unknown to . . . counsel and was consequently left out of the brief.'" United States v. Ceballos, 2004 WL 2676446, at *2 (8th Cir. Nov. 23, 2004) (unpublished op.). The panel rejected this argument, stating that these were "inadequate justifications since [the defendant's opening] brief was not filed until July 23, 2004—almost a month after the Blakely decision was released."  Id.  In accordance with the court's administrative order, however, the panel stayed the mandate pending resolution of Booker and Fanfan; it explained that "in this unusual circumstance, [the defendant's] mandate will be stayed despite his failure to raise this issue in his opening brief."  Id. at *2 n.1.  I take the panel's discussion of the issue to suggest that it would have considered the Blakely issue properly raised if the defendant's opening brief had been filed before, rather than "almost a month after," Blakely was decided.

So far as I can tell, state appellate courts are also considering the merits of claims like Levy's.  See, e.g., State v. Miranda-Cabrera, 99 P.3d 35, __ (Ariz. Ct. App. 2004) ("[T]he State argues that [the defendant] waived any claim he might have to resentencing pursuant to . . . Blakely by failing to raise it at the sentencing hearing or in his opening brief. . . . Decisions of the United States Supreme Court that create new rules apply to all criminal cases still pending on direct review.  Griffith v. Kentucky.  Because [the defendant's] case is still pending on direct review, we will consider the application of the rule set forth in Blakely to the sentencing in his case." (citations omitted)); People v. Barnes, 19 Cal. Rptr. 3d 229, 243 (Ct. App. 2004) (noting that United States v. Curtis, 380 F.3d 1308 (11th Cir. 2004) "found a Blakely waiver based on the defendant's failure to raise the issue until supplemental briefing on appeal," but concluding that the "rule applied in that case appears stricter than California's rule" and thus considering a Blakely claim first raised in a supplemental brief); People v. Wilson, 2004 WL 2677090, at *1 (Cal. Ct. App.) (unpublished op.) (considering Blakely claim first raised in a petition for rehearing); Krebs v. State, 816 N.E. 2d 469, 474-75 (Ind. Ct. App. 2004) ("we evaluate sua sponte the constitutionality of [the defendant's] sentence under the United States Supreme Court's recent decision in Blakely v. Washington"); State v. Conger, 687 N.W. 2d 639 (Minn. Ct. App. 2004) (considering Blakely claim first raised in a supplemental brief); State v. King, 858 A.2d 4, 13-14 (N.J. Super. Ct. App. Div. 2004) (same); State v. Murrin, 2004 WL 2677454, at *3-4 (Ohio Ct. App. Nov. 24, 2004) (considering Blakely issue sua sponte after the defendant challenged only the trial court's application of Ohio's sentencing guidelines); State v. Shaw,

44

The clearest statements in these post-Blakely cases have come from the

Seventh Circuit in United States v. Pree, see supra Part II, and from the Ninth

Circuit in United States v. Ameline, 376 F.3d 967 (9th Cir. 2004).  In Ameline,

even though the defendant "made no challenge to the applicable standard of proof

or to the judge's factfinding authority," the Ninth Circuit held "that the Sixth

Amendment implications of Blakely allow[ed] [the court] to examine sua sponte

its potential impact on [the defendant's] sentence."  Id. at 974.  Thus, while the

Seventh and Ninth Circuits have raised the Blakely issue sua sponte, we have

refused to consider even claims raised in supplemental briefs filed shortly after

Blakely was decided.  And while Pree, Ameline, and the decisions of the Fifth and

Sixth Circuits discussed in Part II, supra, are perhaps the clearest discussions of

this issue, the cases cited in notes 15 and 16, supra, demonstrate that this court is

truly a minority of one on this issue.  Indeed, the eleven other federal circuits that

have been presented with claims like Levy's have all considered the merits of

---

2004 WL 2191044, at *8 (Tenn. Crim. App. Sept. 28, 2004) (unpublished op.) (rejecting the State's argument "that the defendant waived the [Blakely] issue by failing to raise it in his original brief").  But see People v. Abeyta, 2004 WL 2320090, at *4 (Cal. Ct. App. Oct. 15, 2004) (unpublished op.) (2-1 decision) ("[Defendant's Blakely claim] was not asserted in the trial court.  Therefore, all of defendant's Blakely based federal constitutional contentions have been forfeited.")

those claims.[17]  I thus do not understand how this court can continue to reject the sound reasoning of our sister circuits without any sort of explanation or even an acknowledgment of those cases.

## IV.

A final reason for rejecting the rule established in Ardley and followed here is that it sends a clear message to appellate counsel that they should brief any claim that passes the laugh test regardless of whether it has any support in, or is even squarely foreclosed by, our own precedent.  Here, for example, by failing to raise a claim we had already flatly rejected, Levy's counsel cost his client the

---

[17] The cases discussed in Part II and cited in notes 15 and 16, supra, cover the First through Tenth Circuits.  In addition, in United States v. Byers, 740 F.2d 1104 (D.C. Cir. 1984), then-Judge Scalia wrote:

> Neither at trial nor on appeal did appellant raise this Sixth Amendment claim.  Appellant concedes that it was asserted for the first time (by new counsel) in his Petition for Rehearing and Suggestion for Rehearing En Banc.  Appellees argue that we are therefore precluded from considering it.  It is true as a general rule that appellate courts will not consider questions raised for the first time on appeal.  However, we are "bound to consider any change, either in fact or in law, which has supervened since the judgment [from which appeal is taken] was entered," Patterson v. Alabama, 294 U.S. 600, 607, 55 S. Ct. 575, 578, 79 L. Ed. 1082 (1935).  We think that the Supreme Court's decision in Estelle v. Smith, [451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981),] handed down during our consideration of [appellant's] Petition for Rehearing, which elevated [appellant's] Sixth Amendment claim from completely untenable to plausible, invokes this limited exception.

Id. at 1115 n.11 (Scalia, J.) (citations omitted).  Although Judge Scalia wrote for only six of twelve participating judges, Judge Bazelon's dissent, joined by Judges Wald and Mikva, agreed that the Sixth Amendment claim was properly before the court for the same reasons.  See id. at 1161 n.138.  The D.C. Circuit's reasoning is particularly apt here given that Blakely similarly "elevated [Levy's claim] from completely untenable," see Sanchez, 269 F.3d at 1262, "to plausible."

benefit of the new rule announced in <u>Blakely</u>.  Thus, in addition to being inconsistent with <u>Griffith</u>, <u>Olano</u>, and the law of every other circuit, the <u>Ardley-Levy</u> rule is also quite simply an imprudent exercise of the prudential rule that issues not briefed are deemed waived.  <u>See</u> <u>Miranda</u>, 248 F.3d at 443 ("[T]he issues-not-briefed-are-waived rule is a prudential construct that requires the exercise of discretion.").

When faced with a similar case in <u>Johnson v. United States</u>, the Supreme Court opted for a path that would avoid "counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent."  520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718. In <u>Johnson</u>, as here, the defendant sought to raise a claim on appeal that was squarely foreclosed by precedent at the time of trial (and thus was not raised then) but was viable by the time of appeal due to an intervening Supreme Court decision.  The difference between <u>Johnson</u> and Levy's case is that the intervening decision in <u>Johnson</u> was issued in time for the defendant to raise the claim in his first appellate brief, and the question before the Court was whether for Rule 52(b) purposes error must be "plain" as of the time of trial or only as of the time of appeal.  The Court held that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be

'plain' at the time of appellate consideration." Id. The Court's rationale was simple: it reasoned that if it interpreted Rule 52(b) to require that error be "plain" as of the time of trial, trial counsel would interpose numerous baseless objections to rulings that were clearly correct under prevailing law in order to avoid forfeiting the benefit of Griffith retroactivity for claims based on favorable intervening decisions. In Ardley and again here, however, this court has taken a position that encourages precisely such a "laundry list" of appellate arguments, thereby opting for needless waste of legal resources.

Because I find the parallel between Johnson and the instant case particularly compelling, I will try to state it as clearly as possible: "The narrowness of the plain error rule is a reflection of the importance, indeed necessity, of the contemporaneous objection rule to which it is an exception. The contemporaneous objection rule fosters finality of judgment and deters 'sandbagging' . . . ." United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998). It "also promotes the salutary interest of making the trial the main event"; in short, it "is essential to the integrity and efficiency of our judicial process." Id. Similarly, the purpose of the issues-not-briefed-are-waived rule—and Federal Rule of Appellate Procedure 28

in general[18]—"is to conserve the time and energy of the court and clearly to advise the opposite party of the points he is obliged to meet." Thys Co. v. Anglo Cal. Nat'l Bank, 219 F.2d 131, 133 (9th Cir. 1955). Thus, both the contemporaneous objection rule and the issues-not-briefed-are-waived rule are intended to ensure the integrity of the adversary process and conserve legal resources. Johnson adopted a broader interpretation of the plain error exception in order to avoid useless objections that would inevitably undermine the very purposes the contemporaneous objection rule serves. Faced with the same problem, however, the panel opinion inflexibly applies the prudential issues-not-briefed-are-waived rule in a way that undermines the very purposes it serves.

Finally, I do not see how Ardley and Levy can be squared with our advice to counsel in United States v. Battle, 163 F.3d 1 (11th Cir. 1998):

> Even in a death-penalty case, the court expects counsel to be highly selective about the issues to be argued on appeal . . . .
> . . . .
> The Supreme Court of the United States has . . . stressed . . . that the best advocacy relies on selectivity. It is well settled that counsel need not "raise every 'colorable' claim" on appeal. . . . And,

---

[18] See Levy, 379 F.3d at 1244:
To allow a new issue to be raised in a petition for rehearing, or a supplemental brief, or a reply brief circumvents Federal Rule of Appellate Procedure 28(a)(5), which requires than an appellant's initial brief must contain "a statement of the issues presented for review." While some of our decisions refusing to consider new issues in reply, supplemental, or rehearing briefs have mentioned this rule or its predecessor, others have not.

> the former Chief Judge of this circuit, John C. Godbold, has given this advice: "[C]ounsel must select with dispassionate and detached mind the issues that common sense and experience tell him are likely to be dispositive. He must reject other issues or give them short treatment."

Id. at 1-2 (citations omitted). Certainly, we cannot continue to give such advice after Ardley and Levy. Levy's counsel heeded our advice—indeed, he did not have to resort to "common sense and experience" to determine that a Blakely-type claim was not likely to succeed because we had already specifically rejected that claim in Sanchez. But by holding that Griffith only applies if counsel anticipates the new rule and raises a similar claim in the defendant's first brief, we are essentially telling counsel that they should "raise every colorable claim on appeal" and that if they are too "highly selective about the issues to be argued on appeal" they may do great injury to their clients. As a result, I would expect counsel to raise more claims on appeal, including claims squarely foreclosed by our own precedent, and that the arguments supporting those claims will necessarily be less clear and specific. Such kitchen-sink briefs will, of course, make this court's work more difficult and waste judicial resources, not to mention counsel's own time. Thus, even if the Ardley-Levy rule were not in conflict with Griffith, Olano, and the law of every other circuit, I would still dissent from the court's refusal to rehear this case en banc simply because the rule will do great harm to the fair and

50

efficient administration of justice in this circuit.

V.

To recap, I dissent from the denial of rehearing en banc for four primary reasons. First and foremost, the rule announced in Ardley and followed here unjustifiably limits the clear holding of Griffith v. Kentucky that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final." 479 U.S. at 328, 107 S. Ct. at 716 (emphasis added). Because there is no dispute that Levy's case is still "pending on direct review" and is "not yet final," Griffith's constitutional rule necessarily trumps the strictly prudential rule that issues not briefed are deemed waived.

Second, the panel's conclusion that Levy "waived" his Blakely claim is inconsistent with Olano's distinction between "waiver" and "forfeiture." "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" Olano, 507 U.S. at 733, 113 S. Ct. at 1777 (quoting Johnson, 304 U.S. at 464, 58 S. Ct. at 1023). This distinction is crucial, for "[m]ere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)," id. (emphasis added), or, for that matter, justify limiting retroactivity under Griffith, see supra note 7. When Levy's first brief was filed, the Supreme Court had not even granted certiorari in Blakely, and

51

we had squarely rejected the very claim the panel now faults him for omitting. As such, there was no "known right" for Levy to have "intentionally relinquished," and his omission is a clear example of a "forfeiture," not a "waiver."

Third, the panel's opinion continues a circuit split that finds this court standing alone. Indeed, whereas we have been anxious to find untimely Blakely claims "waived," see supra note 2, the Seventh and Ninth Circuits have, in well-reasoned opinions, raised Blakely issues sua sponte. Of course, inconsistency with other circuits does not by itself prove that we have adopted the incorrect view. But I do not understand how we can continue to ignore the numerous cases considering claims such as Levy's, particularly given that our disagreement with those cases is a relatively recent development and not a "longstanding practice."

Finally, the position we have adopted will result in "counsel's inevitably making a long and virtually useless laundry list" of appellate arguments that are plainly unsupported, or even foreclosed, by precedent. It also goes directly against our previous advice that we "expect[] counsel to be highly selective about the issues to be argued on appeal" and "that counsel need not raise every 'colorable' claim." Battle, 163 F.3d at 1-2 (internal quotation marks omitted). As such, in addition to being inconsistent with Supreme Court precedent, Ardley and progeny are quite simply an imprudent exercise of a prudential rule.

For these reasons, I continue to disagree with the rule adopted in <u>Ardley</u> and followed here.  I therefore dissent from the denial of rehearing en banc.

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

The panel decision in this case holds that a defendant may not raise Blakely v. Washington, 124 S.Ct. 2531 (2004) on direct review unless it was raised in the initial appellate brief.[1] Levy says that if it was not raised in the initial brief, the issue has been "waived." I do not see how we can fairly or legally preclude litigants from making Blakely arguments in their post-initial submissions in light of two extraordinarily significant facts, amplified below. First, waiver applies only to those situations where a defendant could have raised an issue in his initial brief but failed to do so. Levy could not have raised a Sixth Amendment objection to his sentencing because in United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001), three years before Blakely was handed down, we held that Apprendi does not apply to the Federal Sentencing Guidelines. This differentiates the instant case from our precedents in United States v. Nealy, 232 F.3d 825 (11th Cir. 2000) and United States v. Ardley, 242 F.3d 989 (11th Cir. 2001), on both of which the Levy panel relies. Second, Griffith v. Kentucky, 479 U.S. 314 (1987), which makes newly declared rules of criminal procedure applicable to all cases still pending on direct review, dictates that Levy be given the opportunity to raise his

---

[1] United States v. Levy, 379 F.3d 1241 (11th Cir. 2004). Although I agree, and joined a panel in In re Dean, 375 F.3d 1287 (11th Cir. 2004) to hold, that Blakely does not apply retroactively to a criminal case on collateral review, I think that a criminal case still pending on direct appeal – a pipeline case – is an entirely different matter.

54

Blakely claims before this court.

## I. Griffith Applies to All Pipeline Cases

The Supreme Court has held that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." Griffith, 479 U.S. at 322. The Griffith Court stated that "after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review." Id. at 322-23. In so holding, the Court made clear that it would not harbor an exception to retroactivity for cases in which the new rule constituted a "clear break" with the past. Id. at 328.

Our internal circuit rules for how and whether an issue can be raised on appeal cannot override the concerns about fundamental fairness and the integrity of judicial review that the Supreme Court identified in Griffith. If the "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication," id. at 322, surely that failure would violate constitutional norms as much in the case of a defendant who failed to raise a new rule of criminal procedure that was not available when he filed his initial appellate brief as it would in the case of a defendant who did anticipate the new rule.

It so happens that in <u>Griffith</u>, the defendant did manage to preserve his <u>Batson</u> objections to the prosecutor's use of peremptory challenges. But there is no basis in <u>Griffith</u> or elsewhere to conclude that the decision applies only to defendants who have preserved their constitutional challenges, whether during trial, throughout direct review, or both. The <u>Griffith</u> Court granted certiorari to answer the question "whether the ruling in <u>Batson</u> applies retroactively to a state conviction pending on direct review at the time of the <u>Batson</u> decision." <u>Griffith</u>, 479 U.S. at 318. <u>Griffith</u> neither posed nor answered the more limited question of whether <u>Batson</u> applies retroactively only to a defendant who has preserved his objection to a prosecutor's peremptory challenges. Rather, summarizing its prior case law, the Court observed that

> in a number of separate opinions since <u>Linkletter</u>, various Members
> of the Court have asserted that, at a minimum, <u>all defendants whose</u>
> <u>cases were still pending on direct appeal</u> at the time of the law-
> changing decision should be entitled to invoke the new rule.

<u>Griffith</u>, 479 U.S. at 322 (quoting <u>United States v. Johnson</u>, 457 U.S. 537, 545 and n.9 (1982) (Harlan, J.) (internal quotations omitted) (emphasis added). The Court distinguished not between defendants who preserved their <u>Batson</u> objections and those who failed to, but rather between "cases that have become final and those

56

that have not."  Griffith, 479 U.S. at 322.  The Griffith Court went on to hold that

> [i]n Justice Harlan's view, and now in ours, failure to apply a newly
> declared constitutional rule to criminal cases pending on direct review
> violates basic norms of constitutional adjudication. . . [A]fter we have
> decided a new rule in the case selected, the integrity of judicial
> review requires that we apply that rule to <u>all similar cases pending on
> direct review</u>.

Id. at 322-23 (emphasis added).

There are no exceptions to the Griffith rule.  It is true that prior to Griffith, in Johnson, the Supreme Court acknowledged three exceptions to the rule of retroactivity in the criminal procedure context.  The first two were not at issue in Griffith and are not at issue here.[2]  The third exception – where a new rule constitutes a "clear break" with past precedent – was at issue in the line of retroactivity cases leading up to Johnson and Griffith, but the Griffith Court refused to leave any room for this exception.  Instead, the Court reiterated the absolute breadth of its holding:

---

[2] The Griffith Court found that in the first two categories, "the new rule <u>already</u> was retroactively applied: (1) when a decision of this Court did nothing more than apply settled precedent to different factual situations . . . and (2) when the new ruling was that a trial court lacked authority to convict a criminal defendant in the first place."  Griffith, 479 U.S. at 324 (emphasis added).  Thus, these two categories cannot be used to say anything about Griffith, let alone the instant case.

We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to <u>all cases, state or federal, pending on direct review or not yet final</u>, with no exception for cases in which the new rule constitutes a 'clear break' with the past.

Id. at 328 (emphasis added).  Any attempt to read into <u>Griffith</u> an unarticulated fourth exception – for defendants who failed to preserve <u>Batson</u> (or <u>Apprendi</u>, etc.) objections – is unconvincing.

## II.  <u>Sanchez</u> Foreclosed Levy's <u>Apprendi</u> Claim

The panel's refusal to apply the newly declared <u>Blakely</u> rule here is all the less justified given that Levy's "failure" to raise his Sixth Amendment right to a jury trial to challenge his federal sentencing enhancements was dictated by this very court.  Prior to <u>Blakely</u>, this court, along with every other appellate court in the nation, had held that <u>Apprendi</u> did not apply to the Federal Sentencing Guidelines.  <u>See Sanchez</u>, 269 F.3d at 1262 ("<u>Apprendi</u> does not apply to judge-made determinations pursuant to the Sentencing Guidelines).  <u>See also</u> <u>United States v. Nealy</u>, 232 F.3d 825, 829 n. 3 (11th Cir.2000) ("The Sentencing Guidelines are not subject to the Apprendi rule."); <u>United States v. Harris</u>, 244 F.3d 828, 829-30 (11th Cir.2001) (holding that <u>Apprendi</u> does not apply to the

relevant conduct provision of the Sentencing Guidelines); and <u>United States v. Diaz</u>, 248 F.3d 1065, 1105 (11th Cir.2001) (noting that "Sentencing Guideline issues are not subject to the <u>Apprendi</u> rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt").[3] Accordingly, how could we possibly consider "waived" an issue that we have already decided?

Even though criminal defendants before <u>Blakely</u> would have had absolutely no reason to raise <u>Apprendi</u> in connection with the Federal Guidelines (given our holding in <u>Sanchez</u>), the panel penalizes defendants for not having the foresight to predict <u>Blakely</u>:

> [W]hile Levy may not have predicted the Supreme Court's ultimate conclusions in <u>Blakely</u>, it is also true that the general argument that a jury must determine all facts regarding sentence enhancements was available to Levy and indeed made by defendants ever since the Sentencing Guidelines came into being.

<u>Levy</u>, 379 F.3d at 1243 . In fact, however, that "general argument" – which is

---

[3] The unanimous agreement of our sister circuits on this point is documented in Justice O'Connor's dissenting opinion in <u>Blakely</u>.  <u>See</u> <u>Blakely v. Washington</u>, 124 S.Ct. 2531, 2547 n.1 (2004).

more accurately described as the specific holding and very point of <u>Blakely</u>, albeit not necessarily with reference to the Federal Guidelines – was <u>not</u> available to Levy, because we took it away from him in <u>Sanchez</u>. The panel derived its "general argument" argument from our decision in <u>McGinnis v. Ingram Equipment Company</u>, 918 F.2d 1491 (11th Cir. 1990). In that case, we held that an employer had waived its right to argue that discriminatory demotion and discharge were not actionable under § 1981 by failing to raise those issues at trial, even though an intervening Supreme Court decision (<u>Patterson</u>) that made those issues available was not decided until after trial. But the panel neglects to address a cardinal difference between <u>McGinnis</u> and the instant case: there was no equivalent of <u>Sanchez</u> in <u>McGinnis</u>. The employer in <u>McGinnis</u>, that is, was not already on notice prior to <u>Patterson</u> that it would be futile to attempt to argue before this court that § 1981 did not extend to claims of discriminatory demotion and discharge.

The panel nonetheless argues that by not raising in their initial appellate briefs a "Blakely-type claim" – a phrase that hardly captures the radicalism of <u>Blakely</u>'s holding – defendants waive their right to invoke <u>Blakely</u>. But the panel never clarifies exactly what it means by a "Blakely-type claim." Had it done so, the panel would have been forced to confront the practical significance of our holding in <u>Sanchez</u>. Is a claim challenging the application of the Federal

60

Sentencing Guidelines in light of <u>Apprendi</u> a "Blakely-type claim"?  If so, could there be any reason why a defendant, after <u>Sanchez</u>, would see any reason to raise <u>Apprendi</u> for this purpose before the Eleventh or any other Circuit?  This is the classic case of a catch-22: defendants can only raise <u>Blakely</u> if they have already raised <u>Apprendi</u>, and yet this court (and every other circuit) said specifically that they couldn't have raised <u>Apprendi</u>!

If <u>Levy</u> could not have raised <u>Apprendi</u> in his initial appellate brief, in accordance with our case law, I do not see how we can prevent him from raising <u>Blakely</u> in a post-initial submission.[4]  To this consideration, I would add that virtually every commentator in the land who has addressed <u>Blakely</u>, including Justices O'Connor and Breyer in their dissents, has emphasized the dramatic novelty of the decision and its potential to reshape the nation's criminal law system.  <u>See</u> <u>Blakely</u>, 124 S.Ct. at 2548-49, 2562.

### III.  The Procedural Bar Rule Cannot Override <u>Griffith</u>

The panel opinion ignores both of the above points in favor of reciting the

---

[4] One month after <u>Levy</u> was decided, this court held in <u>United States v. Reese</u>, 2004 WL 1946076 (11th Cir., Sept. 2, 2004), that <u>Blakely</u> does not apply to the Federal Guidelines.  <u>Levy</u> was thus decided at a time when the application of <u>Blakely</u> in this circuit was not yet clear.  As the Supreme Court, on October 4, 2004, has recently heard argument on this question, we will soon know whether our ruling in <u>Reese</u> will hold up.  The point here is that we cannot now foreclose defendants from making a <u>Blakely</u> argument on direct appeal.  Moreover, if we do not now resolve the question of how to apply new constitutional rulings to pending direct appeals, we will have to face this issue again when the Supreme Court clarifies <u>Blakely</u>.

various cases in which we have denied appellants the ability to raise new issues not covered in their initial briefs on appeal. As noted above, the vast majority of these cases did not involve a new rule of criminal procedure that the Supreme Court announced <u>after</u> a defendant filed his initial appellate brief. The panel relies on <u>Nealy</u>, however, for the proposition that supplemental briefs can be authorized "only when intervening decisions or new developments arise after the moving party's brief has been filed <u>and only when that new authority relates to an issue or issues already properly raised in the party's initial brief</u>." <u>Levy</u>, 379 F.3d at 1243 (summarizing <u>Nealy</u>, 232 F.3d at 830) (emphasis added).

As the panel notes, <u>Nealy</u> was based on Fed. R. App. P. 28(a)(5), which requires an appellant's initial brief to contain "a statement of the issues presented for review." The panel argues that to allow a new issue to be raised in a petition for rehearing, supplemental brief, or reply brief would "circumvent" this rule. The procedural bar rule of <u>Nealy</u>, however, does not serve as its own authority, but derives its legitimacy from the extent to which it serves other legal and institutional values. As such, the rule is subject to countervailing legal and institutional norms. In the circumstances of this case, the panel's reading of Fed. R. App. P. 28(a)(5) would raise a serious constitutional problem, since it would conflict with the absolute rule of retroactivity that the Supreme Court announced

62

in <u>Griffith</u>. To avoid a constitutional conflict with <u>Griffith</u>, Fed. R. App. P. 28(a)(5) should be read to exclude issues that are raised by a new rule of criminal procedure announced <u>after</u> a defendant has filed his initial appellate brief. Such a reading comports with the rule of statutory interpretation set forth in <u>Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council</u>, 485 U.S. 568, 575 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). The Federal Rules of Appellate Procedure are statutory law subject to the <u>DeBartolo</u> rule, and there can be no doubt that <u>Griffith</u> is a constitutional holding.[5]

The panel also notes that even where an appellant, pursuant to Fed. R. App. P. 28(j), wishes to file a relevant supplemental authority that "come[s] to light after a party's initial brief was filed," <u>Levy</u>, 379 F.3d at 1244, the supplemental letter must refer either to a page of the initial brief or to a point argued orally. The suggestion is that even supplemental authorities filed by letter are only permitted where they relate to an issue flagged in the initial brief (or in oral argument). Fed.

---

[5] As noted above, <u>Griffith</u> held that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." <u>Griffith</u>, 479 U.S. at 322. The <u>Griffith</u> Court based this holding on, inter alia, the "cases" and "controversies" requirement of Article III, § 2.

R. App. 28(j) does indeed require that supplemental authorities refer to a page of the initial brief or to a point argued orally, but it refers generally and loosely to all "pertinent and significant authorities [that] <u>come to a party's attention</u> after the party's brief has been filed" (emphasis added) – not to <u>issues affirmatively raised by new rules of criminal procedure announced by the Supreme Court</u> after the party's initial brief has been filed. To suggest that <u>Blakely</u> is a case that has simply "come to [Levy's] attention" since it was announced by the Supreme Court is something of a euphemism.

Moreover, even on its own terms, <u>Nealy</u> does not clearly extend to the facts of the instant case. <u>Nealy</u> involved a defendant who argued at trial that he could not be <u>sentenced</u> pursuant to a federal statute that distinguished sentencing maximums based on drug quantity unless the fact of drug quantity was submitted to the jury. After <u>Apprendi</u> was handed down, the defendant sought to argue for the first time that the <u>indictment</u> must include the element of drug quantity. <u>Nealy</u> held that the defendant could not thus raise the "totally new" issue of his indictment where his initial brief had only raised a question as to his sentence. <u>Nealy</u>, 232 F.3d at 830. In this case, Levy has already raised the validity of the trial court's vulnerable victim enhancement during sentencing, albeit on the basis of testimony that Levy argues should not have been admitted. He is not extending

64

his legal challenge to an entirely separate aspect of the criminal proceedings leading to his conviction and sentence. Rather, he seeks to apply a newly declared constitutional rule to an aspect of those proceedings he has already challenged: the application of the Federal Sentencing Guidelines to his case.

Although comparable issues were debated in United States v. Ardley, 273 F.3d 991 (11th Cir. 2001),[6] that case is also inapplicable. Ardley applied the procedural bar rule to an Apprendi claim even after the Supreme Court remanded to us with instructions to reconsider a prior panel opinion in light of Apprendi. But the defendant in Ardley had available to him at the time of his initial brief a "general argument" that was subsequently elevated into a new rule of criminal procedure by the Supreme Court. As already noted, in this case Levy had no such "general argument" available to him at the time of his initial brief because our decision in Sanchez had taken away his ability to invoke Apprendi to challenge the application of the Federal Sentencing Guidelines. This exceptional situation distinguishes the instant case from Ardley, McGinnis, Nealy, and indeed every other case cited by the Levy panel.

IV. The Procedural Bar Rule Frustrates Efficiency Concerns in this Context

---

[6] For the reasons expressed in our respective dissents to the denial of rehearing en banc in that case, both Judge Tjoflat and I believe that Ardley was wrongly decided. It is worth noting that our sister circuits have not adopted versions of the Ardley and Nealy rule.

The panel decision has the unanticipated consequence of frustrating rather than promoting the judiciary's interest in conserving its scarce resources. As the panel decision notes, the procedural bar rule "serves valuable purposes." Levy, 379 F.3d at 1244 (quoting Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir. 1988)). One of these purposes is to "conserve judicial and parajudicial resources." Presnell, 835 F.2d at 1573. By requiring defendants to raise foreclosed issues over and over again, no matter how unambiguously this court has already decided those issues, Levy gives criminal defendants an incentive to flood the federal courts of this circuit with countless claims that are clearly foreclosed by current precedent, just as Levy's Apprendi claim was clearly foreclosed by Sanchez. The district courts (and this court) will then be forced to address those claims over and over again. This is not a very effective way of conserving scarce judicial resources.

Moreover, the Supreme Court has rejected – albeit in a different context (that of plain error) – the panel's view that defendants should be forced to raise objections that are clearly without merit in light of current precedent, simply in order to be able to preserve their claims on appeal. In Johnson, the defendant raised for the first time on appeal an intervening Supreme Court authority, U.S. v. Gaudin, 515 U.S. 506 (1995), that requires a trial court to submit the issue of materiality in a perjury prosecution to the jury. The trial court had decided this

66

issue itself, consistent with the state of the law at the time, and the defendant (as one would expect) failed to object at trial. In deciding what it would take to establish "plain" error in these circumstances, the Johnson Court observed as follows:

> The Government contends that for an error to be "plain," it must have been so both at the time of trial and at the time of appellate consideration. In this case, it says, petitioner should have objected to the [trial] court's deciding the issue of materiality, even though near-uniform precedents both from this Court and from the Courts of Appeals held that course proper. Petitioner, on the other hand, urges that such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent. We agree with petitioner on this point. . .

Johnson, 520 U.S. at 467-68. Thus, it seems that the Supreme Court has rejected the reasoning that underlies the panel's position and found that it is neither just nor efficient to expect a defendant to raise objections even where "near-uniform precedent" of the Supreme Court and the Courts of Appeals forecloses those

objections.  As noted earlier, prior to <u>Blakely</u>, this and every other circuit court in the nation had held that <u>Apprendi</u> does not apply to the Federal Guidelines.

For the foregoing reasons, I dissent.