TJOFLAT, Circuit Judge,
dissenting from the denial of rehearing en banc:
On May 9, 2003, a jury in the U.S. District Court for the Middle District of Alabama convicted Jerry Higdon of two counts of distribution of five or more grams of “ice” methamphetamine in violation of 21 U.S.C. § 841(a)(1), one count of possession with the intent to distribute five or more grams of ice in violation of 21 U.S.C. § 841(a)(1), and one count of drive-by shooting in violation of 18 U.S.C. § 36(b).[1] Under 21 U.S.C. § 841(b)(1)(B), each of the three drug offenses carried a minimum term of imprisonment of five years and a maximum term of forty years. Drive-by shooting was punishable by up to twenty-five years in prison. 18 U.S.C. § 36(b)(1).
In his Presentence Investigation Report (PSI), the probation officer calculated that Higdon’s offenses involved more than thirty-five ounces (roughly 1000 grams) of methamphetamine and more than four kilograms of marijuana. Higdon objected to this calculation, arguing that the unindict-ed marijuana should not have been included and that only 23.58 grams of ice was attributable to him by a preponderance of the evidence.[2] The court overruled these objections and set the base offense level at 36, as the PSI recommended. The court’s calculation included thirty-four ounces of ice and three-plus kilograms of marijuana that were attributed to Higdon solely on the basis of the trial testimony and proffer of a co-defendant testifying pursuant to a plea agreement. Had Higdon’s objections been sustained, his base offense level would have been 28.
The PSI also recommended that the offense level be increased four levels because Higdon “was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive,” U.S.S.G. § 3B1.1(a), two levels because he obstructed justice, U.S.S.G. § 3C1.1, and two levels because he possessed a dangerous weapon during the course of his offenses, U.S.S.G. § 2D1.1(b)(1). Higdon objected to the PSI’s characterization of his role in the offense, arguing that he was in fact entitled to a two-level reduction because he played a minor role in the offense. He also objected to the obstruc *1143 tion-of-justiee enhancement and to the PSI’s recommendation that he not receive a reduction for acceptance of responsibility-
The court overruled all of Higdon’s objections and set his total offense level at 44, as the PSI recommended.[3] Even with a criminal history score of zero (a criminal history category of I), the Guidelines called for concurrent sentences of life in prison. Because none of the offenses for which Higdon was convicted individually permitted a life sentence, the Guidelines required the court to order that the sentences run consecutively,[4] resulting in a total sentence of 145 years in prison. In contrast, had all of Higdon’s objections been sustained, his total offense level would have been 24, which, coupled with a criminal history category of I, would have yielded a guideline range of 60 to 63 months.
Higdon appealed his convictions and sentences and filed his initial brief on January 28, 2004. In the brief, Higdon raised four issues related to his convictions and challenged his sentences on the ground that the district court erred in calculating the amount of drugs for which he was responsible, but he did not argue that it was unconstitutional for the court to have made that determination. Higdon filed a reply brief addressing the same issues as his initial brief on April 16, 2004.
On June 24, 2004, in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the Washington State Sentencing Guidelines violated the Sixth Amendment right to a trial by jury. Id. at 2537-38. In so holding, the Court clarified the rule it had announced in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000) (“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”):
the “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.
Blakely, 124 S.Ct. at 2537. Dissenting in Blakely, Justice O’Connor observed that the Washington Guidelines and the Federal Sentencing Guidelines were, in all significant respects, virtually indistinguishable. Id. at 2548-50 (O’Connor, J., dissenting). Then, as expected, in United States v. Booker, - U.S. -, 125 S.Ct. 738, 755-56, 160 L.Ed.2d 621 (2005), the Court extended Blakely to the Federal Guidelines. To remedy the Federal Guidelines’ constitutional defect, the Court excised the statutory provision that made the Guidelines mandatory. Id. at 756-57.[5] Now, the *1144 Guidelines are “effectively advisory,” and although a sentencing court must “consider Guidelines ranges,” it may “tailor the sentence in light of other statutory concerns as well.” Id. at 757.
Prior to Blakely, this and every other circuit had unequivocally upheld the Guidelines against Blakely-type challenges. See Blakely, 124 S.Ct. at 2547 n. 1 (O’Connor, J., dissenting) (collecting cases); United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir.2001) (en banc) (“Ap-prendi does not apply to judge-made determinations pursuant to the Sentencing Guidelines.”). Thus, it “comes as little surprise” that Higdon did not make such a claim in his opening brief. United States v. McDaniel, 398 F.3d 540, 546 nn.3-4 (6th Cir.2005). Within a month of the Blakely decision, however, Higdon filed a “motion for leave to file supplemental argument” and an accompanying brief asserting that his sentence was unconstitutional under Blakely. The panel denied that motion, citing United States v. Curtis, 380 F.3d 1308 (11th Cir.2004), and United States v. Levy, 379 F.3d 1241, reh’g en banc denied, 391 F.3d 1327 (11th Cir.2004), vacated and remanded, 545 U.S. -, 125 S.Ct. 2542, 162 L.Ed.2d 272 (2005). The panel then affirmed Higdon’s convictions and sentences without addressing the merits of his Blakely claim.
The Supreme Court has clearly held “that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.” Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). In this circuit, however, this principle only applies if the defendant timely raised the issue in his initial brief on appeal — even in a case in which the “new rule” was not announced until after that brief was filed. Levy, 379 F.3d at 1242. This rule dates to United States v. Ardley, 242 F.3d 989, reh’g en banc denied, 273 F.3d 991 (11th Cir.2001), which refused to consider a defendant’s Apprendi-based challenge even though the Supreme Court had remanded his case to us for reconsideration in light of Apprendi. Id. at 990. Compare with Stutson v. United States, 516 U.S. 193, 197, 116 S.Ct. 600, 603, 133 L.Ed.2d 571 (1996) (“[A] GVTt order both promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially relevant decisions and arguments that were not previously before it.” (emphasis added)). The bar this rule imposes is absolute: claims such as Higdon’s are effectively barred on both direct appeal and collateral review, and they cannot form the basis of an ineffective assistance of counsel claim. See Levy, 391 F.3d at 1334 n. 3 (Hull, J., concurring in the denial of rehearing en banc); Ardley, 273 F.3d at 993-94 (Carnes, J., concurring in the denial of rehearing en banc). We are apparently the only circuit to apply the prudential issues-not-briefed-are-waived rule in such a strict fashion. See Levy, 391 F.3d at 1345-48 & nn.15-17 (Tjoflat, J., dissenting from the denial of rehearing en banc).
In my dissent from the denial of rehearing en banc in Levy, I explained at length that the Ardley/Levy rule is inconsistent with Supreme Court precedent, squarely in conflict with the decisions of every other circuit, and, notwithstanding all else, quite simply an imprudent application of a prudential rule. See generally id. at 1335-51. I summarized my disagreement with the rule as follows:
First, it unjustifiably limits the principle of Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final.” Id. at 328, 107 S.Ct. at 716 (emphasis added). Sec *1145 ond, by [conflating the terms “waiver” and “forfeiture,” it] unduly limits our scope of review under Federal Rule of Criminal Procedure 52(b), as interpreted by the Supreme Court in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[6] Third, it continues a circuit split that finds this court standing alone. Fourth, it sends a clear message to appellate counsel that they should brief every colorable claim — even those claims that are squarely foreclosed by our own precedent — or else risk costing their clients the benefit of a favorable intervening decision. As a result, counsel will be tempted to be less discriminating in selecting issues to be argued on appeal, and briefs will necessarily be less specific and clear, which will in turn significantly hinder the fair and efficient administration of justice in this circuit.
Levy, 391 F.3d at 1336-37 (footnotes omitted). Although I remain firmly convinced that we should abandon the Ardley/Levy rule for these reasons, I will not repeat here all that I said in those cases. Instead, I write briefly only to explain two additional problems with our rule that I have not discussed previously.
In Levy, I observed that “the eleven other federal circuits that have been presented with claims like [the one at issue in this case] have all considered the merits of those claims.” Id. at 1347-48; see id. at 1345-48 & nn. 15-17 (collecting cases). Post -Booker, it continues to be clear that our approach is contrary to that of every other circuit. For example, in United States v. Washington, 398 F.3d 306 (4th Cir.2005), the Fourth Circuit held that “[although appellate contentions not raised in an opening brief are normally deemed to have been waived, the Booker principles apply in this proceeding because the [Supreme] Court specifically mandated that we ‘must apply [Booker] ... to all cases on direct review.’ ” Id. at 312 n. 7 (citation omitted) (quoting Booker, 125 S.Ct. at 769). The court then vacated the defendant’s sentence as plain error under Booker. Id. at 312.
In United States v. McDaniel, 398 F.3d 540 (6th Cir.2005), the Sixth Circuit held that the defendants had not “waived” their Booker claims “[b]ecause neither Booker nor Blakely had been decided when [they] were sentenced or when [their] briefs were due [on appeal], and because neither [defendant had] taken any affirmative steps *1146 manifesting an intention to relinquish or abandon Booker rights.” Id. at 546. Indeed, the court remarked that the defendants’ failure to raise Booker-type claims at trial or on appeal “[came] as little surprise given the prior statements of [the Sixth Circuit] that Apprendi did not invalidate the federal Sentencing Guidelines.” Id. at 546 n. 3. The court then vacated the defendants’ sentences as plain error under Booker. Id. at 550.
In United States v. Macedo, 406 F.3d 778 (7th Cir.2005), the Seventh Circuit considered a Blakely/Booker claim first advanced in a petition for rehearing:
Despite the government’s arguments to the contrary, Macedo has not waived [his Blakely/Booker] argument by failing to argue [it] on appeal. In a direct appeal, a defendant might preserve his Blakely and Booker arguments by raising them in subsequent filings. See United States v. Henningsen, 387 F.3d 585, 591 (7th Cir.2004) (“Although [the defendant] did not raise the issue of constitutionality in his brief, he made notice of the Blakely and Booker decisions in a subsequent filing and raised the issue during argument. In light of the uncertainty surrounding this issue and the questionable constitutionality of [the defendant’s] sentencing enhancement, we do not find that [the defendant] has waived his right to challenge the validity of the district court’s sentencing enhancement”); see also United States v. Pree, 384 F.3d 378, 396 (7th Cir.2004) (“Given the precedent in this circuit prior to Blakely, we think it would be unfair to characterize [the defendant] as having waived a challenge to the validity of her sentencing enhancement.”). Macedo has done so here by virtue of filing a petition for rehearing.
Macedo, 406 F.3d at 789. The court then remanded the defendant’s case pursuant to its decision in United States v. Paladino, 401 F.3d 471 (7th Cir.2005). Macedo, 406 F.3d at 790.[7]
In United States v. Clifton, 406 F.3d 1173,(10th Cir.2005), the Tenth Circuit stated,
The Supreme Court decided [Blakely\ and [Booker] during the pendency of Defendant’s appeal. We must apply the holdings in Blakely and Booker to all cases in which a defendant properly raised an issue under either case. Booker, 125 S.Ct. at 769. Defendant properly raised her Sixth Amendment issues in a supplemental brief. Compare United States v. Lindsey, 389 F.3d 1334, 1335 n. 1 (10th Cir.2004).
Clifton, 406 F.3d at 1175 n. 1. The court then went on to vacate the defendant’s sentence as plain error under Booker. In the Lindsey footnote cited by the Clifton court, a Tenth Circuit panel had refused to *1147 consider a claim raised in a letter filed under Federal Rule of Appellate Procedure 28(j) because the defendant had failed to request permission to file a supplemental brief properly raising his Blakely claim. The Eighth Circuit appears to have taken this position as well: defendants will be allowed to raise Blakely/Booker claims in supplemental briefs, but claims raised in 28(j) letters will not be considered.[8] Thus, although there may be minor differences among the approaches of other circuits— some require a properly filed supplemental brief, while others accept any sort of supplemental filing, while still others have raised the issue sua sponte — -no other court has adopted our extreme approach. See generally Levy, 391 F.3d at 1345-48 & nn.15-17 (Tjoflat, J., dissenting from the denial of rehearing en banc).[9]
*1148 Most recently, in United States v. Ameline, 409 F.3d 1073 (9th Cir.2005) (en banc), the en banc Ninth Circuit observed that “Booker explicitly stated that its holding applies to all cases pending on direct appeal.” Id. at 1083. The court, therefore, held that “[e]ven where the briefs filed by the parties do not raise a Booker objection, ... the issue may be raised and should be considered.” Id. All eleven judges on the Ameline en banc panel apparently agreed with this holding.
This clear, one-sided circuit split raises two problems that I did not address in Levy. First, the fact that we treat similarly situated defendants differently than eleven other circuits is itself inconsistent with Griffith. Griffith held that the “failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication” because
selective application of new rules violates the principle of treating similarly situated defendants the same .... [T]he problem with not applying new rules to cases pending on direct review is “the actual inequity that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary” of a new rule.
Griffith, 479 U.S. at 322, 107 S.Ct. at 713 (quoting United States v. Johnson, 457 U.S. 537, 556 n. 16, 102 S.Ct. 2579, 2590 n. 16, 73 L.Ed.2d 202 (1982) (citation omitted)).
Several months prior to Griffith, in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court had established a new, more defendant-friendly test for evaluating claims that a prosecutor’s peremptory challenges were motivated by race in violation of the Equal Protec *1149 tion Clause. Id. at 96-98, 106 S.Ct. at 1723-24. The only question in Griffith was whether Batson’s holding should apply to Griffith’s case even though it constituted a “clear break” with prior Supreme Court precedent. The Court answered this question in the affirmative and abandoned its old “clear break exception” to retroactivity.[10] It observed that Batson and Griffith “were tried in [the same state court] approximately three months apart,” that the “same prosecutor exercised peremptory challenges at the trials,” and that “[i]t was solely the fortuities of the judicial process that determined the case [the Supreme Court] chose initially to hear on plenary review.” Griffith, 479 U.S. at 327, 107 S.Ct. at 715. The Court reasoned that “it hardly comports with the ideal of administration of justice with an even hand, when one chance beneficiary — -the lucky individual whose case was chosen as the occasion for announcing the new principle — enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine.” Id. (quoting Hankerson v. North Carolina, 432 U.S. 233, 247, 97 S.Ct. 2339, 2347, 53 L.Ed.2d 306 (1977) (Powell, J., concurring in the judgment)) (internal quotation marks omitted).
Likewise, it hardly comports with the ideal of evenhanded justice when similarly situated defendants are treated differently based only on the location of the federal court in which they were sentenced. District courts in the Eleventh Circuit sentence approximately ten percent of all defendants sentenced in the federal courts.[11] Accordingly, while ninety percent of all defendants who did not raise Blakely/Booker claims in their initial briefs (for the imminently sensible reason that such claims were squarely foreclosed by then-controlling precedent) will be permitted to raise these now-viable claims in some sort of supplemental filing, the similarly situated ten percent who were sentenced in our circuit[12] will be precluded from doing so for no other reason than that they were sentenced in our circuit. Stated differently, our Ardley/Levy rule results in nonre-troactivity in one in ten similar federal appeals for reasons that are irrelevant to either the merits of the case or the justifications for the general rule that a new rule for the conduct of criminal prosecutions must be applied retroactively to all cases not yet final. For this reason alone, the rule is inconsistent with Griffith, even assuming that it can be justified in the first *1150 place.[13]
The second problem created by the current circuit split involves the Sentencing Reform Act (SRA) itself. One of the primary purposes of the SRA was to “avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” 18 U.S.C. § 3553(a)(6); see also Kate Stith & Jose A. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 104 (1998) (“Reduction of ‘unwarranted sentencing disparities’ was a — probably the — goal of the Sentencing Reform Act of 1984.”). Indeed, district courts are to take this goal into account every time they impose a sentence. 18 U.S.C. § 3553(a)(6). Under the new, post-Booker sentencing model, this court must also consider this goal when reviewing sentences for reasonableness. See Booker, 125 S.Ct. at 769; McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.2005) (“District judges must [apply the Guidelines] as guidelines, with appellate review to determine whether that task has been carried out reasonably.”).
No other circuit holds that defendants like Higdon have “waived” their Blakely/Booker claims. Consequently, whereas most similarly situated defendants in other circuits will be resentenced under the new advisory-guideline model, all such defendants in our circuit will be stuck with then-old, mandatory-guideline sentences. This is problematic because the new model may result in significantly different sentences in many cases. See generally United States v. Rodriguez, 406 F.3d 1261, 1286-89 & nn. 8-12 (11th Cir.2005) (Tjoflat, J., dissenting from the denial of rehearing en banc). To state the obvious, then, this will create sentencing disparity. Moreover, this sort of sentencing disparity is “unwarranted” because it is based on nothing more than the fact that our circuit has applied an unexceptional appellate waiver rule in an unusually harsh manner, whereas other circuits have had the good sense not to do so. And, needless to say, our Ardley/Levy rule has nothing to do with a defendant’s criminal history or conduct, which the SRA identify as the guideposts for identifying “similarly situated” defendants. See 18 U.S.C. § 3553(a)(6).
Because the Ardley/Levy rule is prudential only, it should at least yield when, as in Blakely/Booker cases, its application will frustrate the purposes of an important federal statute. Sentencing ten percent of a class of similarly situated defendants under a model that is radically different from the model under which the other ninety percent are sentenced will inevitably produce unwarranted sentencing disparity, *1151 meaning that our Ardley/Levy rule is clearly at odds with the purposes of the SRA. The disparity created is all the more glaring because it is based solely on the happenstance of circuit boundaries— that is, a defendant in Fourth Circuit South Carolina will be treated differently than a similarly situated defendant just across the border in Eleventh Circuit Georgia. Cf. Stephen Breyer, Federal Sentencing Guidelines Revisited, 11 Fed. Sentencing Rptr. 180, 180 (1999) (citing a pre-SRA study that “indicated that a defendant sentenced by a Southern judge was likely to serve six months more than the average, while a defendant sentenced in Central California was likely to serve twelve months less” as an example of “unreasonable disparity in sentencing”). Therefore, even accepting the Ardley/Levy rule’s continued general application, I would not apply it in this case or to other similarly situated defendants because it frustrates important congressional objectives.
For the foregoing reasons, as well as the reasons given in my dissent in Levy, I dissent from the denial of rehearing en banc.[14]

. Higdon was found not guilty of conspiring to distribute ice methamphetamine in violation of 21 U.S.C. § 846(a)(1), on an additional substantive count of distribution of ice in violation of 21 U.S.C. § 841(a)(1), on an additional substantive count of possession with the intent to distribute ice in violation of 21 U.S.C. § 841(a)(1), and on three counts of using a firearm in relation to the charged drug crimes in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii), and (B)(i), respectively.

. In its verdict, the jury specifically found that five or more grams of ice were involved in each of the three offenses of which Higdon was convicted. The indictment charged that these three offenses involved a total of 20.9 grams. In his objection to the PSI's calculation, Higdon argued that his sentence should be computed based on a drug quantity of 23.58 grams of ice.

. The drug offenses were "grouped” together pursuant to U.S.S.G. § 3D1.2(d), and the drive-by shooting was then “grouped” with this first group, also pursuant to § 3D 1.2(d).

. See U.S.S.G. § 5G1.2(d) (“If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.”).

.The Court also excised 18 U.S.C. § 3742(e), which provided for de novo review of departures from the applicable guideline range. Appellate courts now review sentences only for reasonableness. See Booker, 125 S.Ct. at 764-66.

. Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.” By its terms, the rule not only authorizes an appellate court to consider errors not brought to the trial court’s attention, but also permits the appellate court to consider errors not raised by the parties on appeal, i.e., to raise issues sua sponte. See, e.g., Herzog v. United States, 226 F.2d 561, 569-70 (9th Cir.1955) ("The words 'the court’ refer to the court which notices the error and the clear meaning of the sentence is that a court may notice plain or prejudicial error although not brought to the attention of the court noticing the error .... The manifest intent of the rule is to permit courts sua sponte to notice error ....”), op. adhered to on reh'g en banc, 235 F.2d 664 (9th Cir. 1956) (en banc); 3A Charles Alan Wright, Federal Practice and Procedure: Criminal 3d § 856 ("Ordinarily Rule 52(b) is invoked by counsel who, in preparing an appeal, discover what they consider to be an error to which no objection was taken below. The rule is not so limited, however, and the appellate court may take notice of an error on its own motion though it is never put forward by counsel.”). The Ardley/Levy rule, therefore, has the effect of depriving panels of this court of discretion Rule 52(b) expressly confers. This effective limited repeal of Rule 52(b) has no basis in Supreme Court precedent. Indeed, the inflexibility of our rule is obviously inconsistent with the case-by-case approach to plain-error analysis Olano requires. See Olano, 507 U.S. at 731-37, 113 S.Ct. at 1776-79.

. The First Circuit recently rejected a similar "waiver” argument:
[T]he government ... argues that the defendant has waived the Blakely/Booker argument by failing to raise it in his initial brief on appeal. While we have often reiterated that issues raised only in a reply brief or at oral argument are generally considered waived, we will exercise our discretion to consider new issues under exceptional circumstances. In the instant case, the parties' briefs were submitted prior to a substantial change in the applicable law wrought by the Supreme Court's decisions in Blakely and Booker. This change constitutes an "exceptional circumstance” in which we will permit new issues to be raised, and we accordingly accepted supplemental briefing from both sides. Likewise, in our recent decision in United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005), another panel of this court considered the merits of a Booker argument not raised in appellant’s opening brief.
United States v. Vazquez-Rivera, 407 F.3d 476, 487-88 (1st Cir.2005) (footnote and citations omitted).

. In United States v. Cramer, 396 F.3d 960 (8th Cir.2005), the Eighth Circuit refused to consider a Blakely/Booker claim first raised in a Rule 28(j) letter. Id. at 962 n. 3. The court explained that although Rule 28(j) "provides a method whereby a party may supplement cited authorities after filing briefs or after oral argument,” "a party may not raise arguments for the first time in a Rule 28(j) letter.” Id. Accordingly, because the defendant failed to request "permission to file a supplemental brief properly raising the Blakely issue,” the court "refuse[d] to consider the matter.” Id. Thus, the court all but explicitly stated that it would have considered the issue had it been raised in a properly filed supplemental brief. Then, in United States v. Mooney, 401 F.3d 940, 949 (8th Cir.2005), the Eighth Circuit did, in fact, consider a Blakely/Booker claim first raised in a properly filed supplemental brief. Indeed, it may be that the Eighth Circuit will now consider even claims raised in 28(j) letters. On March 22, the Cramer panel vacated its original opinion and authorized supplemental briefs on the Booker issue. United States v. Cramer, 396 F.3d 960 (8th Cir.2005).

. Post -Booker, the Fifth Circuit has held that "absent extraordinary circumstances” it will not consider Blakely/Booker claims first raised in a reply brief, a petition for rehearing, or a petition for certiorari. United States v. Lewis, 412 F.3d 614, 615 (5th Cir.2005) (reply brief); United States v. Taylor, 409 F.3d 675, 676 (5th Cir.2005) (refusing to consider a claim first raised in a petition for certiorari and citing Ardley among other cases); United States v. Hernandez-Gonzalez, 405 F.3d 260, 261-62 (5th Cir.2005) (refusing to consider a claim first raised in a petition for rehearing and citing Ardley and Levy among other cases). In each of these cases, the court has first determined that the defendant could not pass the plain-error test and then held that, a forti-ori, he/she could not establish "extraordinary circumstances.” As a result, the Fifth Circuit has not yet been pressed "to determine what constitutes 'extraordinary circumstances.' ” Lewis, 412 F.3d at 615. (While the First Circuit applies a similar rule that "issues raised only in a reply brief or at oral argument are. generally considered waived” and will only be considered "under exceptional circumstances,” it has held that Blakely and Booker standing alone constitute an "exceptional circumstance.” Vazquez-Rivera, 407 F.3d at 487. Thus, the Fifth Circuit’s "extraordinary circumstances” rule may well turn out to require little more than that the defendant establish plain error.)
Although the Fifth Circuit's rule appears similar to our Ardley/Levy rule, the two rules differ in practice in at least two quite important respects. The first is that the Fifth Circuit actually reviews the defendant's claim for plain error before determining whether the defendant can establish "extraordinary circumstances.” In contrast, "[t]his Court has simply determined that no manifest injustice results if it declines to consider untimely Booker claims on appeal.” Ante, at 1139 n. 5. That is, the presence or absence of reversible plain error is irrelevant to our rule. See. e.g., United States v. Dockery, 401 F.3d 1261, 1262-63.
The second practical difference between its rule and ours is that the Fifth Circuit is far less likely to find that a defendant has “waived” the Booker issue. For example, in United States v. Akpan, 407 F.3d 360 (5th Cir.2005), the Fifth Circuit stated,
The government argues that [the defendant] has not properly preserved his Booker objection and that we should review [his] challenge for plain error. [The defendant] did not, however, fail to preserve his Boolcer challenge to the district court's loss calcula *1148 tion. Our review of [his] pre-sentencing objections ... and his objections during his sentencing reveal that [he] repeatedly objected to the district court's determination of a range of financial loss between five and ten million dollars on the ground that that figure had not been proven at trial. [He] also consistently urged that the district court confine its determination of loss to the amount alleged in the indictment. Although [the defendant] never explicitly mentioned the Sixth Amendment, Apprendi, or Blakely until his Rule 28(j) letter, we are satisfied that his objections adequately apprised the district court that [he] was raising a Sixth Amendment objection to the loss calculation because the government did not prove to the jury beyond a reasonable doubt that the loss was between five to ten million dollars. When, as here, a defendant preserves his error, [we review for harmless error, not plain error].
Id. at 375-76 (emphasis added) (footnotes omitted); see also id. at 375 n. 48 (“After the Supreme Court handed down [Blakely], both appellants raised Blakely challenges to their sentences in a Rule 28(j) letter to this court.”); id. at 376 n. 53 (citing cases holding that an objection to the district court's drug-quantity calculation is sufficient to preserve a Blakely/Booker claim). Higdon's objections in the district court and in his first brief on appeal were substantially similar to those described by the Fifth Circuit in Akpan. Thus, if Higdon had sold ice in Fifth Circuit Mississippi rather than Eleventh Circuit Alabama, his Blakely/Booker claim would have been reviewed for harmless error rather than not at all.
To be clear, I do not agree with the Fifth Circuit’s reasoning in Lewis, Taylor, and Hernandez-Gonzalez, and, moreover, I am not sure that those cases are consistent with prior Fifth Circuit precedent, see, e.g., United States v. Clinton, 256 F.3d 311, 313 (5th Cir.2001) (“This case is on remand from the United States Supreme Court for further consideration in light of [Apprendi], Apprendi was decided after this Court affirmed [the defendant’s] convictions and sentences on direct appeal, and the arguments presented herein were not presented to the district court or this Court on initial appeal. We have, therefore, carefully considered the record in light of [the defendant's Apprendi-based] arguments on remand and the plain error standard of review.” (citation omitted)). Nevertheless, as a practical matter, even that circuit has not gone so far was we have in Ardley, Levy, and progeny.

. Pre-Griffith, “where the Court ... expressly declared a rule of criminal procedure to be 'a clear break with the past,’ it almost invariably [went] on to find such a newly minted principle nonretroactive.” Johnson, 457 U.S. at 549, 102 S.Ct. at 2587 (quoting Desist v. United States, 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969)).

. See Administrative Office of the U.S. Courts, Judicial Business of the United States Courts 2004, at 227-29 tbl. D-7, available at http://www.uscourts.gov/judbus2004/appendi-ces/ d7.pdf (reporting that Eleventh Circuit district courts processed 7,236 of the 73,316 defendants convicted and sentenced in the federal courts in the year ending September 30, 2004).

.Concurring in the denial of rehearing en banc in Levy, Judge Hull argued that Griffith did not require us to address the defendant’s Blakely claim because a defendant who failed to include such a claim in his opening brief— even when his opening brief was due before Blakely was decided — was not "similarly situated” to a defendant who had included such a claim. Levy, 391 F.3d at 1330-31. I obviously disagree, but even assuming this to be true, it must be clear that defendants sentenced in the Eleventh Circuit who did not raise Blakely/Boolcer claims in their opening briefs on appeal are, in all relevant respects, similarly situated to defendants sentenced in other circuits who did not raise Blakely/Booker claims in their opening briefs on appeal.

. I in no way mean to suggest that the principle of Griffith is violated every time there is a discernible circuit split as to how a new rule is to be applied to cases pending on direct review. For example, the circuits are currently split as to how the plain-error doctrine applies to Booker errors. See United States v. Pirani, 406 F.3d 543, 562-63 (8th Cir.2005) (en banc) (Bye, J., concurring in part and dissenting in part) ("The phrase 'three-ring circus' (referring to the three-way circuit split) has been used to describe the federal circuits' disparate handling of Booker pipeline cases. Such a phrase is descriptive[.] [N]onetheless, it is probably more appropriate to characterize the split as a three-ring circus with, twelve unique acts each attempting to dazzle us with its compelling logic."). Obviously, some circuits are wrong and others are right, but this differential application of Booker does not implicate Griffith. The instant case, however, involves an eleven-to-one circuit split as to whether new rules should be applied at all to a distinct, easily identifiable subset of cases pending on direct review. Because Griffith demands equal treatment of similarly situated defendants whose cases are still in the pipeline when a new rule is announced, the very fact that our court is the only court that will not apply a new rule to cases such as this one is in itself inconsistent with Griffith.

. In the concluding footnote of its recent opinion in Pasquantino v. United States, - U.S. -, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005), the Supreme Court stated, "Petitioners argue in a footnote that their sentences should be vacated in light of [Blakely], Petitioners did not raise this claim before the Court of Appeals or in their petition for cer-tiorari. We therefore decline to address it.” Id. at 1781 n. 14. Also in a footnote, the dissent responded that “[t]his omission was no fault of the defendants ..., as the petition in this case was filed and granted well before the Court decided Blakely.” Id. at 1783 n. 5 (Ginsburg, J., dissenting). Thus, the defendants had “raised Blakely at the earliest possible point: in their merits briefing.” Id. I will not expend significant space trying to decipher these dueling footnotes, but two points are worth making briefly.
First, the question on which certiorari was granted in Pasquantino was “whether a scheme to defraud a foreign government of tax revenue violates the wire fraud statute,” Pasquantino, 125 S.Ct. at 1771; the case had nothing to do with the Federal Sentencing Guidelines. The majority’s footnote was thus squarely in line with Supreme Court Rule 14.1(a), which states that "[o]nly the questions set out in the petition [for certiorari], or fairly included therein, will be considered by the Court.” Of course, this rule is similar to our own rule regarding issues not raised in the appellant’s opening brief, but it goes without saying that the Supreme Court operates quite differently than we do. The Supreme Court exists to decide issues, not to correct errors, and its rule against considering questions not presented in the petition for certio-rari is necessary to “maintain the integrity of the process of certiorari. The Court decides which questions to consider through well-established procedures,” and permitting the parties "to alter these questions or to devise additional questions at the last minute would thwart this system.” Taylor v. Freeland & Kronz, 503 U.S. 638, 646, 112 S.Ct. 1644, 1649, 118 L.Ed.2d 280 (1992). The policies underpinning the Ardley/Levy rule are, to say the least, of a considerably lesser magnitude.
Second, assuming that the Pasquantino footnote means something, I do not think that it undermines my position. The Pasquantino Court ”decline[d] to consider” the Booker issue because the defendants had not raised it "before the Court of Appeals or in their petition for certiorari.” Higdon, of course, has raised the issue "before the Court of Appeals” in the form of a motion to file a supplemental brief, which we denied. I have no doubt that he will also include the issue in his petition for certiorari. Therefore, Higdon is not in the same position as the defendants in Pasquanti-no, and the footnote does not suggest that his Booker claim is waived.